**LOOK YUN LIN v. ACHESON, Secretary of State.**

**No. 28984.**

United States District Court
N. D. California, S. D.

Dec. 13, 1949.

Joseph Hertogs, San Francisco, Cal., for petitioner.

Frank J. Hennessy, U. S. Atty., by Edgar Bonsall, San Francisco, Cal., for respondent.

ERSKINE, District Judge.

Plaintiff brings this action under Section 503 of the Nationality Act of 1940, 8 U.S. C.A. § 903, asking for a judgment declaring her to be a national of the United States. If the facts as alleged in the petition are true, plaintiff is a citizen of the United States under the nationality statutes in force at the time of her birth, being the daughter of a citizen of the United States, who was a citizen at the time of plaintiff's birth, and who had taken up residence in the United States at the time of plaintiff's birth.

According to affidavits submitted by plaintiff, when she was nineteen years of age her father, a citizen of the United States and a resident in the Northern District of California, executed an affidavit of identity for presentation to consular officials in China to obtain recognition of her citizenship status so that she might come to the United States; because of the disruption of World War II the procedure was delayed until the termination of hostilities, at which time plaintiff was denied a passport of the United States on the ground of failure to satisfactorily identify herself as a national of the United States.

By the terms of Section 503 of the Nationality Act of 1940 this action may be brought in the District Court of the United States for the district in which the plaintiff claims a permanent residence. Plaintiff has made such claim of a permanent residence within this district.

Defendant has moved for dismissal of the action on two grounds:

1. That the plaintiff has not made a bona fide "claim" to permanent residence; and

2. That this action does not fall within the purpose and intent of the said Section 503 of the Nationality Act of 1940.

Defendant's first objection goes to the issue of venue or "territorial juris-

diction", contending that plaintiff has no possible claim to permanent residence in this district. However, the statute permits suit to be brought in the district where the plaintiff "claims" a permanent residence; the complaint meets this requirement. Actual residence at present or at any time in the past is not required. Gan Seow Tung v. Carusi, D.C., 83 F.Supp. 480.

In addition, plaintiff has shown more than a mere claim of residence in this district. Under the facts as alleged, to be taken as true for the purpose of this motion, plaintiff's father is a permanent resident of this district. By the terms of Section 244 of the Government Code of the State of California the residence of the father is the residence of the unmarried minor child. Although such a situation does not necessarily continue after the child reaches majority, it has been held that an infant's coming of age while living away from the father did not of itself change the domicile from that of the father. Wiggins v. New York Life Ins. Co., D.C., 2 F.Supp. 365. In view of the fact that an attempt was made by the father to bring his alleged daughter, the plaintiff, to this country while she was still a minor, the plaintiff has some basis for a bona fide claim of permanent residence within this district; this Court should not presume a change of domicile or residence in order to defeat venue.

The Congressional debates shed little light on this venue provision of Section 503. The original Senate version read " * * * may petition a district court of the United States for a judgment * * *." 86 Cong.Rec. 12818. This was changed by House amendment to the present wording. The only comment on the change is found in a statement by the managers of the House conferees after the Senate-House conference committee had approved the House amendment as follows: "This amendment provided that persons claiming the rights or privileges of nationals of the United States might petition the district courts of the United States for judgment declaring them to be such nationals."

In essence that is identical with the original Senate version. It is probable that the House amendment merely intended to provide a more orderly and logical handling of these cases, to insure that the Court hearing the case would be the one most readily having access to the facts, i. e. the court in which permanent residence was claimed could most readily dispose of the action in a just and speedy fashion. Congress had in mind those types of cases which would arise under the Nationality Code of 1940. Most of such cases would involve plaintiffs presently residing in the United States, or who at some time in the past had resided therein, and were claiming such prior residence as one element in their claim of nationality. However, cases such as the present were bound to arise, involving not the substantive provisions of the Nationality Code of 1940, but earlier statutes, in which residence is not a requisite element in a claim of citizenship.

In the present case, where the plaintiff is abroad, and the issue of venue is raised, it is the District Court of the Northern District of California in which the facts of the case are most readily available, since plaintiff's claim to citizenship stems from her father, a resident of California. It would seem to be a perversion of Congressional intent to say that plaintiff must bring her case in Washington, D. C., particularly when viewed in conjunction with the provision of the statute which permits the plaintiff in such an action to apply for temporary admittance to this country.

Defendant's second contention is that this action does not fall within the purpose and intent of Section 503 of the Nationality Act of 1940 in that that section was intended to apply only to persons who had formerly resided in the United States, but who had expatriated themselves for one reason or another.

The statute on its face shows no such limitation, the remedy having expressly been made available to "any person". Nor do the decided cases involving this remedy support the defendant's position. Of the two cases arising under this section of the Nationality Act in the federal courts of this state, Gan Seow Tung v. Carusi, supra, and Chin Wing Dong v. Clark,

D.C., 76 F.Supp. 648, neither involved a so-called "expatriate" petitioner, to whom the remedy would have to be limited if defendant's contention were upheld. On the other hand, these cases do not fully support plaintiff's position either, since in both cases the plaintiff was within the physical jurisdiction of the court.

Defendant, however, insists that even where the statutory language is plain, the courts may look to the legislative history for further evidence of the legislative intent, in order to determine whether giving the words their natural significance leads to an unreasonable result plainly at variance with the policy of the legislation as a whole. Chatwin v. U. S., 326 U.S. 455, 464, 66 S.Ct. 233, 90 L.Ed. 198.

When the literal meaning of the language of a statute is plainly at variance with the legislative purpose, as manifested by legislative history, the courts will follow the purpose of the statute rather than the literal words. U. S. v. Rosenblum Truck Lines, 315 U.S. 50, 55, 62 S.Ct. 445, 86 L.Ed. 671.

A close examination of the Congressional debate cited by the defendant does not support his position. During the course of a discussion between Congressmen Rees and Jenkins, Representative Jenkins raised a hypothetical situation similar to that with which we are faced in this case, i. e., the case of an alleged citizen born in a foreign country and never an actual resident of the United States. He then stated that the statute, as amended, provides that such an individual *can* petition the Federal courts to test the question of whether he is a national. 86 Congressional Record p. 13247 et seq.

This statement by Representative Jenkins *to the effect that the provisions of the Act apply in such a case was never contradicted in the ensuing discussion or elsewhere, so far as this Court has been able to determine.*[1] Certain statements of Representative Rees, upon which defendant bases his argument, are irrelevant to the issue of the scope of the statute and are concerned only with the question of the rights of individuals who have expatriated themselves under the new provisions of the Nationality Code, and the necessary steps these expatriates would have to take to insure retention of United States citizenship.

It is probably true that the general purpose behind this Nationality Act of 1940 was to codify existing law, and any novel

---

1. 86 Cong.Rec. 13247 et seq. Rep. Jenkins —"Let us get back to this hypothetical case. * * * The law goes too far in that respect. *This fellow has the right to file a petition in the United States Courts.* We used to say that these fellows who are away from here have no right in our courts. But here is a man who has never been here and he has the right to file a petition in the United States court demanding a certificate that he is an American national and he may use it. * * * If the consul over there is on to his job he will refuse him a certificate, but if he is inclined to be loose he may say, 'We will let him go through. He claims he is a national and we will give him a certificate.' * * * Do you make him establish the fact he is a national and that he is what he claims to be before he can masquerade all over Europe with a certificate from an American consul saying that he is something which he is not?" (Note: Rep. Jenkins has here switched the discussion from the question of a right to day in court to the issue of what safeguards are in the act to require strict proof by the petitioner to the local consul before the issuance of a certificate of nationality.)

Rep. Rees (continuing discussion as to issue of safeguards against indiscriminate issuance of certificates by local consul): "Under the present law the individual the gentleman from Ohio is talking about does not have to go through any process at all. If he is still a citizen of the United States, even though born abroad, he does not have to go through any process at all. In this Act we put the burden of proof upon the individual to show that he is a citizen or a national of the United States. Along with that we have guarded the thing further. After placing the power and authority in the hands of the State Department, we give him as I tried to explain a few minutes ago, a day in court. The other way he can come back into the United States, regardless of what we may say about it, because he is still a citizen and entitled to our protection no matter how long he may have been abroad."

features thereof were probably intended to strengthen rather than loosen naturalization and immigration laws. Therefore, the basic issue is whether a general intent of Congress to tighten the law is overriden by the inclusion in the law of a new remedy open to "any person" aggrieved in the manner designated. Two opposing concepts are involved. On the one hand there is the desire to protect the rights of any American citizen; on the other is the desire to protect the courts from an avalanche of declaratory suits by parties fraudulently alleging American nationality. The proper balancing of these two elements can best be served through a careful scrutiny of the cases as they arise, to insure that there is prima facie a bona fide claim of citizenship. If it appears that such a conclusion will unduly tax the courts or the administrative agency involved, the remedy would seem to lie in the direction of action by the Congress to amend the statute so as to clarify the scope of this new remedial action.

Defendant's motion to dismiss is hereby denied.