**ACHESON, Secretary of State of United States, v. MARIKO KUNIYUKI.**

No. 12772.

United States Court of Appeals Ninth Circuit.

June 14, 1951.

Rehearing Denied July 27, 1951.

See 190 F.2d 897.

J. Charles Dennis, U. S. Atty., John E. Belcher and Kenneth J. Selander, Asst. U. S. Atty., Seattle, Wash., for appellant.

Wirin, Rissman & Okrand, Los Angeles, Cal., for appellee.

Before MATHEWS, BONE and POPE, Circuit Judges.

MATHEWS, Circuit Judge.

Appellee, Mariko Kuniyuki, was born in the United States on July 2, 1916, was taken to Japan in 1918, remained in Japan until November, 1940, then returned to the United States, remained in the United States until August, 1941, then returned to Japan, remained in Japan until August, 1950, and then returned to the United States. In 1946 and 1947 she voted in six Japanese elections. Thereafter, prior to May 25, 1950, she applied to a United States consul in Japan for registration as a national of the United States. The application was denied on the ground that, in view of 8 U.S.C.A. § 801,[1] she was not a national of the United States, having lost such nationality by voting in Japanese elections. Thereafter, on May 25, 1950, she instituted an action under 8 U.S.C.A. § 903[2] against appellant, Dean Acheson, Secretary of State, in the District Court for the Western District of Washington— the district in which she claimed her permanent residence—for a judgment declar-

ing her to be a national of the United States. Appellant defended on the ground that appellee had lost her United States nationality by voting in Japanese elections —a defense based on § 801. A trial was had, an opinion was filed,[3] findings of fact and conclusions of law were stated and a judgment was entered which, in effect, declared appellee to be a national of the United States. From that judgment this appeal is prosecuted.

The court below held that the Japanese elections of 1946 and 1947—the elections in which appellee voted—were not political elections in a foreign state, within the meaning of § 801. In so holding, the court below followed Arikawa v. Acheson and Tsunashima v. Acheson, D.C.S.D. Cal., 83 F.Supp. 473, and Yamamoto v. Acheson, D.C.Ariz., 93 F.Supp. 346. See, also, Furuno v. Acheson, D.C.S.D.Cal., 94 F.Supp. 381; Kai v. Acheson, D.C.S.D. Cal., 94 F.Supp. 383; Seki v. Acheson and Yada v. Acheson, D.C.S.D.Cal., 94 F.Supp. 438; Rokui v. Acheson, D.C.S.D.Cal., 94 F.Supp. 439; Furusho v. Acheson, D.C. Hawaii, 94 F.Supp. 1021. However, we do not agree with that holding. Instead, we agree with the holding in Kuwahara v. Acheson, D.C.S.D.Cal., 96 F.Supp. 38, that the Japanese elections of 1946 and 1947 were political elections in a foreign state, within the meaning of § 801, and with a similar holding in Uyeno v. Acheson, D.C. W.D.Wash., 96 F.Supp. 510.[4] Reasons for holding that the Japanese elections of 1946 and 1947 were political elections in a foreign state, within the meaning of § 801— reasons which we deem valid and sufficient —are stated in the opinions in the Kuwa-

1. Section 801 provides: "A person who is a national of the United States * * * shall lose his nationality by:
* * *
"(e) Voting in a political election in a foreign state * * *."

2. Section 903 provides: "If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within

the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States. * * *"

3. Kuniyuki v. Acheson, D.C.W.D.Wash., 94 F.Supp. 358.

4. Only the elections of 1947 were involved in the Uyeno case.

hara and Uyeno cases and need not be restated here.

The court below found that appellee, in voting in the Japanese elections of 1946 and 1947, "did not act freely and voluntarily," thus, in effect, finding that she voted involuntarily. Appellee was a witness at the trial and was the only witness. Her testimony was, in part, as follows:

"Q. Why did you vote in the 1946 and '47 elections? What were the reasons for your voting and the circumstances surrounding your vote? A. After the war ended, General MacArthur and the occupational forces granted the women in Japan for voting,[5] and to vote I thought it would help the cause of democracy in Japan. It was repeated and emphasized again and again by the occupation forces, and therefore I thought it was my duty to vote.

"Q. Were you at any time told by the occupation forces or anyone connected with the army of occupation that, if you voted, you might lose your American citizenship? A. No.

"Q. Did you discuss it with anybody? A. No. * * *

"Q. As a matter of fact, there was no force used to compel you to vote, was there? Physical force? A. No, there wasn't any.

"Q. Only the force of the spirit? A. Yes.

"Q. Was there any physical threat made, if [you] did not vote? A. There wasn't any.

"Q. Was there any threat of bodily harm to [you] or loss of job or loss of food or loss of pay or loss of home? A. No, there wasn't any."

Appellee put in evidence at the trial an affidavit made by her on July 11, 1950, before a United States vice consul in Japan. The affidavit was, in part, as follows:

"After the termination of war here in Japan, there came into effect the women's suffrage through which the women were given the chance to participate in the democratic future of Japan, and, at the time of the elections, I constantly read much in the newspapers and other publications, in addition to election guidance programs over the radio that were sponsored by the central government of Japan and occupational authorities from the offices of the Supreme Commander,[6] Eighth Army, and military governments, that it was absolutely essential that every woman of voting age in Japan should turn out at the polls, thereby positively asserting themselves as voters and exponents of democracy. So I, in total ignorance of the Nationality Act [8 U.S.C.A. §§ 501–1006], but with a view toward exercising my ideas with respect to democratic practices, voted in the same way as the Japanese women citizens, not realizing for a moment that, by so doing, I was, in effect, relinquishing my American citizenship. It was only through the so convincing approach of occupation force voting drives, and no talk of we few 'orphan American'[7] or instructions to us, that prompted me to participate in the great democratic spirit which engulfed everyone at the time. I did not vote under duress. It was only after the deed had been done that public notice was given to we 'orphans' that, if we had voted, we had violated the Nationality Act."

▇ Thus, from her testimony and affidavit, it appeared that appellee voted in the Japanese elections of 1946 and 1947 because the "occupation forces" in Japan were urging Japanese women to vote[8] and thus assert themselves "as voters and exponents of democracy," and because she thought it her "duty to vote" and "thought it would help the cause of democracy in Japan;" that she voted "with a view toward exercising [her] ideas with respect to democratic practices;" that, in so vot-

5. Meaning, we suppose, that women in Japan were granted the right or privilege of voting.

6. Meaning, we suppose, the Supreme Commander of the Allied Powers.

7. Meaning, we suppose, nationals of the United States residing in Japan.

8. There was no evidence that appellee was ever personally urged, advised or requested to vote.

ing, she participated "in the great democratic spirit which engulfed everyone at the time;" that she voted in ignorance of the law (§ 801) and of the legal consequences of such voting; that she "did not vote under duress;" that no "physical force" was used to compel her to vote; and that no "physical threat" was made, nor "any threat of bodily harm * * * or loss of job or loss of food or loss of pay or loss of home." It did not appear that appellee voted involuntarily. The finding that she voted involuntarily was clearly erroneous.

In an attempt to justify that finding, appellee cites eleven district court cases—the Arikawa, Tsunashima, Yamamoto, Furuno, Kai, Seki, Yada, Rokui, Furusho and Kuwahara cases, supra, and Ouye v. Acheson, D.C.Hawaii, 91 F.Supp. 129—in each of which a national of the United States who had voted in one or more Japanese elections was found to have done so involuntarily. These cases avail appellee nothing, for the following reasons:

The opinions in the Arikawa, Kai and Furusho cases do not state the evidence on which Arikawa, Kai and Furusho were found to have voted involuntarily. We cannot assume that the evidence in those cases was similar to the evidence in the case at bar. If it was, the finding that Arikawa, Kai and Furusho voted involuntarily was clearly erroneous. It appears from the opinions in the Tsunashima, Yamamoto, Seki, Yada, Rokui, Kuwahara and Ouye cases that Tsunashima, Yamamoto, Seki, Yada, Rokui, Kuwahara and Ouye were coerced into voting by being told or made to fear that, unless they voted, their food rations would be discontinued.[9] It appears from the opinion in the Furuno case that Furuno, too, was coerced into voting, although the nature of the coercion is not indicated. In the case at bar, no coercion was shown.

 It is clear that appellee, by voting in the Japanese elections of 1946 and 1947, lost her United States nationality. The fact, if it be a fact, that she did not intend to lose her nationality and did not know that she would lose it if she voted in these elections is immaterial. See Savorgnan v. United States, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287. Section 801 was not involved in Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, cited by appellee. The Moser case, therefore, is not in point here.

Judgment reversed.

---

9. Similar coercion was shown in the Uyeno case, supra, not cited by appellee.