### TAKANO
v.
### DULLES, Secretary of State.
### Civ. A. No. 1210.

United States District Court
D. Hawaii.
Nov. 17, 1953.

Wirin, Rissman & Okrand, Los Angeles, Cal., Fong, Miho, Choy & Chuck, Honolulu, Hawaii, for plaintiff.

A. William Barlow, U. S. Atty., Louis B. Blissard, Asst. U. S. Atty., Honolulu, Hawaii, for defendant.

WIIG, District Judge.

This is an action brought by the plaintiff, Lydia Chimako Tsurumaru Takano, against the Secretary of State, under Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903. The complaint, filed September 29, 1952, alleges that the plaintiff is a citizen of the United States, having been born at Los Angeles, California, on June 26, 1923; that she is married to John Masaru Takano, a citizen of the United States and a permanent resident of the Territory of Hawaii; and that she claims Hawaii as her permanent address. It is further alleged that plaintiff voted at the general elections conducted in postwar Japan in April 1947, and that her voting was not her free and voluntary act but was the result of coercion. In July 1951, plaintiff applied for a passport at the office of the United States Consul in Japan, which was refused, and instead she was issued a "Certificate of the Loss of the Nationality of the United States" on October 29, 1951, stating that she had lost her United States nationality by voting in the 1947 elections.

The defendant filed a general denial to the allegations contained in the complaint, through his attorney, the United States Attorney for the District of Hawaii.

This Court has jurisdiction of the case.

The plaintiff gained admission to the United States for the purpose of prosecuting the present action under a "Certificate of Identity" granted on the plea of need of her physical presence at the trial. Although numerous exhibits were received in evidence, the plaintiff was the only witness who gave oral testimony. The following fairly summarizes plaintiff's proof at the trial with respect to the circumstances leading up to and surrounding her participation in the 1947 elections:

In February 1931, when plaintiff was seven and one-half years of age, she and her younger sister were taken by her stepmother to Japan. Both sisters carried passports duly issued by the Department of State. It was plaintiff's intention to return to the United States upon graduation from Girls' Middle School. She was graduated from the school in April 1941, but did not return to the United States because her father did not send her funds with which to travel. Her father remained in the United States during the entire period in question.

Sometime in 1944, plaintiff obtained employment of a temporary nature for the district officers in the district where she was living, which employment was available to persons who were not nationals of Japan. This employment continued until April 1947. She voted in Japanese elections on April 20 and April 30, 1947. When asked why she voted, plaintiff testified that General MacArthur had granted women the privilege of

voting and she was afraid if she did not comply with his orders she would be punished; she feared she might not receive her rations at a time when food and materials were scarce; and she feared that if she failed to vote, it would hamper the procedures for her return to the United States. She also testified her stepmother's father became an election official in 1947 and he told her that all members of the family had to vote. She had lived continuously with her stepmother's father from the time of her arrival in Japan. She testified she did not want to vote in 1947 because she was not familiar with politics but in her mind there was no alternative but to vote. She requested exemption from voting in 1948 because after the 1947 elections she learned for the first time that her voting would prevent her from returning to the United States.

Some of the above testimony was elicited on cross examination. Further evidence brought out on cross examination revealed that there was no actual threat of bodily harm, or loss of job, or loss of food, if she failed to vote, nor had she ever heard of anyone losing a ration card for failure to vote at a Japanese election.

On June 7, 1951, plaintiff married John Masaru Takano, an American citizen, whose permanent residence is Honolulu, Hawaii. The marriage took place in Japan and a child was born to the couple in Honolulu on August 1, 1953, the mother having returned to Hawaii for the purpose of appearing in this action. She claims Honolulu, Hawaii, as her permanent residence.

Documentary evidence introduced by plaintiff depicted the post-war situation in Japan with respect to sponsorship and control of political elections by the American Occupation Forces under the command of General MacArthur. The "climate" during this period has been fully described in Hatsuye Ouye v. Acheson, D.C. Haw., 91 F.Supp. 129; Akio Kuwahara v. Acheson, D.C.S.D.Cal., 96 F.Supp. 38; Hichino Uyeno v. Acheson, D.C.W.D.Wash., 96 F.Supp. 510; Ka-sumi Nakashima v. Acheson, D.C.S.D. Cal., 98 F.Supp. 11, and Kiyokuro Okimura v. Acheson, D.C.Haw., 111 F.Supp. 303.

■■ It is settled in the Ninth Circuit that the elections held in Japan in 1947 were political elections in a foreign state within the meaning of Section 401 (e) of the Nationality Act of 1940, 8 U. S.C.A. § 801(e). Acheson v. Mariko Kuniyuki, 9 Cir., 189 F.2d 741, rehearing denied, 9 Cir., 190 F.2d 897, certiorari denied, 342 U.S. 942, 72 S.Ct. 554, 96 L.Ed. 701. Nevertheless, the occupation and government of Japan by the Supreme Commander of the Allied Powers was a military possession recognized by principles of the international law of war. 56 Am.Jur., War, § 204.

The evidence received on behalf of the defendant consisted of copies of newspaper articles in the "Nippon Times" published in Tokyo, Japan, and the Pacific Edition of "Stars and Stripes" dated April 2, 1947, in which the American consulate officials in Yokohama warned American citizens of Japanese ancestry residing in Japan that voting in the April elections would cause forfeiture of their American citizenship. No showing was made that plaintiff had ever read the articles or heard of their contents prior to April 20 and April 30, 1947.

■ Before the penalty of expatriation under Section 401 of the Nationality Act of 1940, 8 U.S.C.A § 801, may be imposed, it must be made to appear to the Court that plaintiff's voting in the 1947 elections was a voluntary act. Takehara v. Dulles, 9 Cir., 205 F.2d 560. The right of American citizenship which the Constitution conferred upon plaintiff should not be extinguished except pursuant to a clear statutory mandate. Mandoli v. Acheson, 344 U.S. 133, 73 S. Ct. 135. And there is no reason for imposing a lighter burden on the Government if it seeks to prove expatriation of a native-born citizen than is required in denaturalization cases where the usual requirement of proof is "clear, unequivocal and convincing evidence". Acheson

v. Maenza, D.C.Cir., 202 F.2d 453, 456. In Bauer v. Clark, 7 Cir., 161 F.2d 397, 401, certiorari denied 332 U.S. 839, 68 S.Ct. 210, 92 L.Ed. 411, rehearing denied 332 U.S. 849, 68 S.Ct. 342, 92 L.Ed. 419, a case involving a complaint under Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903, it was held:

> "In one case (denaturalization proceeding) the government seeks to revoke by showing that the certificate was wrongly issued; in the other (expatriation proceeding) it seeks to destroy that which has been legally conferred. Certainly the annihilation of the right is equally disastrous to the person affected in one case as in the other. We think that the government carries the same heavy burden in both situations." (Parenthetical matter supplied.)

See Lehmann v. Acheson, 3 Cir., 206 F.2d 592, 598; February 1953 Harvard Law Review, 736 et seq.

The difficulties of the Court in appraising and weighing the testimony of a witness whose self-interest in the case is paramount are present in this trial. Extended cross-examination of plaintiff did not tend to cast doubts on her testimony given on direct examination, even though minor inconsistencies were revealed. She appears to be worthy of belief.

The Court finds that plaintiff voted in the 1947 elections for the reasons she feared punishment (though not physical punishment) if she did not comply with General MacArthur's orders; that she might lose her rations at a time when food and materials were scarce; and she feared that failure to vote might hamper the procedures for her return to the United States.

■ It is the opinion of the Court that plaintiff's acts of voting in the 1947 elections held in post-war Japan were not free and voluntary within the meaning of Section 401(e) of the Nationality Act of 1940, 8 U.S.C.A § 801(e), and that her participation in the elections as

shown by the evidence in this case did not cause her to lose her status as a national of the United States.

Judgment will be entered declaring plaintiff to be a national of the United States under the provisions of Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903.