**LEE WING HONG et al.**
v.
**DULLES.**
No. 10985.

United States Court of Appeals,
Seventh Circuit.
July 30, 1954.

Irwin N. Cohen, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., John S. Polainer, Sp. Agent, Dept. of State, 'Washington, D. C., of counsel, for defendant-appellant.

Robert Tieken, U. S. Atty., Anna R. Lavin, Asst. U. S. Atty., Chicago, Ill., for appellants.

Nathaniel S. Ruvell, Beverly Hills, Cal., Jack Wasserman, Washington, D. C., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

This declaratory judgment action to establish the American citizenship of Lee Wing Hong, Lee Wing Ning and Lee Wing Foo (plaintiffs) was filed in the District Court on November 28, 1951, pursuant to Title 8 U.S.C.A. § 903,[1] and Title 28 U.S.C.A. § 2201. After trial, the court entered its findings of fact, conclusions of law and, on May 20, 1953, a judgment by which it was adjudged and decreed that plaintiffs have been since birth and are now citizens of the United States. From this judgment defendant appeals.

While a number of contested issues are relied upon as grounds for reversal, they may be summarized as (1) whether the District Court had jurisdiction to determine the citizenship of plaintiffs in an action for declaratory judgment, and (2) whether the proof sustains the findings upon which rest the court's conclusion and judgment that plaintiffs are citizens.

Plaintiffs were born in China and allege that they are the natural born sons of Lee You Fon, by reason of which they claim to be American citizens. In view of the conceded fact that Lee You Fon, the alleged father, is and was an American citizen at birth, we see no occasion to recite the facts by which he attained that status. He came to the United States in 1924, returned to China in

1. Now Immigration and Nationality Act, § 360, 8 U.S.C.A. § 1503.

1930, where he married a Chinese alien, Wong Shee (also known as Wong Sun Gock). Plaintiffs assert that they are the children born of this marriage, Lee Wing Hong on May 13, 1932, Lee Wing Ning on October 7, 1933, and Lee Wing Foo on August 5, 1935.

On September 25, 1949, plaintiffs' alleged father executed and filed an affidavit with the American Consul in Hong Kong, seeking for plaintiffs American passports. On April 9, 1951, the American Consul was reminded that Lee Wing Foo would be sixteen on August 5, 1951, and it was requested that his application for passport be expedited. Formal passport applications were executed on May 11, 1951. On June 25, 1951, plaintiffs were called in by the American Consul in Hong Kong for an interview. Passport applications were disapproved on June 29, 1951, upon the ground that "the claims to identity were fraudulent." Subsequently, on November 28, 1951, the instant complaint was filed.

The District Court found that "Plaintiffs are the blood sons of Lee You Fon and Wong Shee, also known as Wong Sun Gock," that "Lee You Fon is and was a citizen of the United States at birth and resided in the United States prior to the birth of the plaintiffs," and "That the plaintiff Lee Wing Foo made diligent efforts to return to the United States prior to his sixteenth birthday and was prevented from returning by reason of the failure of the defendant to issue travel documents to him." The court concluded as a matter of law that "This Court has jurisdiction of this cause under Section 503 of the Nationality Act of 1940 (8 U.S.C. § 903) and under the Declaratory Judgment Act (28 U.S.C. 2201)," "That the plaintiffs were citizens of the United States at birth pursuant to Revised Statutes, Section 1993 (2 Stat. 153), and the Act of May 24, 1934 (48 Stat. 797)," and "That the plaintiff, Lee Wing Foo, did not lose his American citizenship by failure to return to the United States prior to his sixteenth birthday under Section 201-g of the Nationality Act of 1940 (8 U.S.C. 601-g),[2] in view of the fact that his return to the United States was prevented by circumstances beyond his control."

The travail which the defendant has experienced relative to its position on the jurisdictional issue is worthy of note. The complaint alleged jurisdiction under Sec. 503 of the Nationality Act of 1940, 8 U.S.C. § 903, and under 28 U.S.C. §§ 1331 and 2201. In his original answer defendant admitted jurisdiction as thus alleged. In an amended answer filed some six months later, defendant denied that the court acquired jurisdiction under Sec. 903, Title 8 U.S.C. On February 4, 1953, when the case was called for trial, counsel for defendant in a colloquy with the court expressly abandoned any contention that the court was without jurisdiction and stated, "We can agree that the sole issues in this case is one [are those] of identity and nationality." The hearing appears to have been concluded on February 6, 1953, and on March 30 of the same year defendant filed a written motion to dismiss the complaint "on the ground that the Court is without jurisdiction to entertain it under Section 503 of the Nationality Act of 1940 (8 U.S.C. 903)." On May 20, 1953, this motion to dismiss for want of jurisdiction was denied, and on the same date the court entered its findings and conclusions as above stated.

■ While we recognize that a jurisdictional issue may be raised at any stage of the proceeding, even by a court of its own volition, we cannot escape the thought that defendant's belated attack on the court's jurisdiction, coming after his former contrary admissions, detracts from the force of the contention now advanced in this court. In any event, our study of the situation leads us to the conclusion that defendant's attack on jurisdiction was properly denied by the District Court.

2. Now Immigration and Nationality Act, § 301, 8 U.S.C.A. § 1401.

██ We agree with the defendant that Title 28 U.S.C. Sec. 2201, entitled "Creation of remedy", is a procedural statute and cannot be relied on solely as a basis for jurisdiction. It does not create rights but provides the means by which rights otherwise recognized may be adjudicated. And it is settled that there must be an actual controversy concerning adverse legal interests. As the court stated in Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617: "Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages." Thus, whether there was an actual controversy between the parties as to legal rights asserted by plaintiffs must depend upon Sec. 503 of the Nationality Act of 1940, 8 U.S.C. § 903, which provides in part: "If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency * * * for a judgment declaring him to be a national of the United States."

As we understand, it is conceded, at any rate not in dispute, that plaintiffs, if sons of Lee You Fon, are citizens and nationals of the United States. Defendant advances a contention, however, which we find difficult to comprehend, that there was no issue between the plaintiffs and the American Consul at Hong Kong as to their nationality but that the issue was solely one of identity, that is, whether they were, as asserted, sons of Lee You Fon.

Defendant in his brief states: "The defendant concedes that plaintiffs applied for passports and that a passport is a privilege to be accorded, in the discretion of the Secretary of State, to those owing allegiance, whether citizen or not, to the United States for the facilitation of travel." And it is argued, "Circumstances concerning the application for documentation of the plaintiffs at Hong Kong were such that the defendant could not be reasonably satisfied as to the identity of the persons making the claim to citizenship. That is not to say that the persons are not citizens. That is not to say that valid claims to citizenship in the names of such persons did not exist." It is further asserted that a number of possibilities exist, such as that plaintiffs' claim to citizenship might have been fictitious and that they might have been impersonators or imposters. The brief further states, "The defendant concedes performance of the first essential to jurisdiction, that is, a privilege claimed. The next question presented is whether there has been a denial of that privilege by the defendant as contemplated by the statute. * * * In this case, technically speaking, plaintiffs' applications for passports have been disapproved. The defendant contends that this is not the equivalent of a 'denial' * * *."

██ The essence of all this argument is that the American Consul at Hong Kong did not deny a right or privilege claimed by plaintiffs, that is, to have a passport issued, without which they could not come to the United States, but that the Consul's action was only a refusal in his discretion to issue the same because of what he regarded as insufficient proof of identity. We think this is a supercilious argument and that it could be made in any case where a citizen, while abroad, was denied a passport so that he might return to this country. Nothing more would be required than that the Consul refuse to issue a passport on the issue of identity. The argument that a refusal to issue a passport because of insufficient proof of identity is not a denial within the meaning of the statute of the right or privilege claimed by plaintiffs is without support, either in reason or

common sense. The predicament of the aggrieved party is no different than if he had been denied a passport on the express basis that he was not a national. And we think it immaterial that the American Consul acted in a discretionary capacity, assuming that such was the case. See Perkins v. Elg, 307 U.S. 325, 349, 59 S.Ct. 884, 83 L.Ed. 1320. While defendant now contends that the sole issue is that of plaintiffs' identity, he conceded at the hearing, as already noted, that the issue was that of "identity and nationality." Thus, at that time he recognized that the two issues were to be considered together, while here he argues that they are separate and distinct, in effect that they bear no relation to each other.

Sec. 903 also provides: "If such person is outside the United States and shall have instituted such an action in court, he may, upon submission of a sworn application showing that the claim of nationality presented in such action is made in good faith and has a substantial basis, obtain from a diplomatic or consular officer of the United States in the foreign country in which he is residing a certificate of identity stating that his nationality status is pending before the court, and may be admitted to the United States with such certificate * * *." These plaintiffs who were outside the United States, instituted an action in court and have under this provision been admitted and were witnesses in the instant case. It must be assumed that as a basis for the issuance of such certificate plaintiffs satisfied a diplomatic or consular officer that their claim of nationality was presented in good faith and that their showing of identity was sufficient.

■■ It is suggested by the defendant, apparently with little enthusiasm, that Sec. 903 affords a judicial remedy only for persons born within the United States who go abroad and attempt to return. The only case called to our attention which affords any support for the suggestion is that of a District Court in Ly Shew v. Acheson, 110 F.Supp. 50.

What the court there stated appears to be dictum but in any event other courts have held to the contrary. In Look Yun Lin v. Acheson, D.C., 87 F.Supp. 463, at page 465, in response to the contention that the section was applicable only to persons who had formerly resided in the United States, the court stated, "The statute [Sec. 903] on its face shows no such limitation, the remedy having expressly been made available to 'any person'. Nor do the decided cases involving this remedy support the defendant's [the government's] position." See also Wong Wing Foo v. McGrath, 9 Cir., 196 F.2d 120, 122, and Acheson v. Fujiko Furusho, 9 Cir., 212 F.2d 284, 288. Either with or without authority, however, we think it hardly open to question, under the plain, unambiguous language which Congress has employed, that the section is applicable to "any person" who is denied a right or privilege as a national "by any Department or agency, or executive official thereof" upon the ground that he is not a national. That is what the section expressly declares, without limiting or qualifying words. The language is all-inclusive and embraces nationals born abroad just as it does those born within the United States. If Congress had intended to limit its application it could readily have employed language to that effect. In view of the plain language employed, there is no room to engage in the nebulous process of ascertaining congressional intent. In our judgment, plaintiffs' claim to nationality and defendant's refusal to issue passports essential to plaintiffs' rights to enter the United States engendered a controversy between the parties of which the court acquired jurisdiction both by the express terms of Sec. 903 and by the Declaratory Judgment Act, 28 U.S.C.A. Sec. 2201.

■ On the other issue argued by defendant, that is, that the proof was not sufficient to support the findings upon which the conclusion of the District Court rests, that plaintiffs are the sons of Lee You Fon, admittedly an American citizen, we think no detailed discussion

is necessary. The court heard the oral testimony of numerous witnesses and it was the function of the trial court to determine their credibility and the weight to be given their testimony. We have read the testimony and think that it supports the findings; certainly we cannot say that they are clearly erroneous, which we would be required to do under Fed. Rules Civ.Proc. Rule 52(a), 28 U.S.C.A., as a prerequisite to our agreement with defendant's contention. In fact, defendant's attack upon the findings proceeds on a theory with which we have no sympathy. In his brief, defendant, after conceding that the proof establishes a "prima facie" case, in support of the findings states, "The defense, in opening argument, asked the lower court to adopt a standard of clear and convincing proof." The essence of the argument here is that this court should refuse to accept the findings of the District Court because that court failed or refused to employ defendant's "clear and convincing proof" theory. Three cases are cited in support of this contention: Lee Sim v. United States, 2 Cir., 218 F. 432, 435; Ex Parte Chin Him, D.C., 227 F. 131, 132, 133, and Ly Shew v. Acheson, D.C., 110 F.Supp. 50, 58–59. All of these cases relative to the quantum of proof are directed at persons of the Mongolian race, and particularly to the Chinese. The Court of Appeals in Mar Gong v. Brownell, 9 Cir., 209 F.2d 448, at page 453, in repudiating this theory stated: "We recognize all that may be said with respect to the necessity of the court guarding against imposition, but we also are of the view that no special quantum of proof should be exacted from any person claiming American citizenship merely because of his racial origin." We agree with this statement but think it could well be expressed in more emphatic language. We would be much chagrined to think that the adjudication of an asserted right in the courts of this country was dependent in the slightest degree upon the national origin of the party involved. To think otherwise is to countenance discrimination in the courts, the one certain place where it should be unknown.

What we have said relative to the findings of the District Court is applicable to all of the plaintiffs, although there is a further situation, both factually and legally, concerning the plaintiff, Lee Wing Foo, who was born August 5, 1935. The complaint was filed November 28, 1951, and at that time all of the plaintiffs, including Lee Wing Foo, were outside the United States. It appears to be defendant's contention that Lee Wing Foo, even though an American citizen at birth, became expatriated because of his failure to comply with Sec. 6, Title 8 U.S.C.A., Act of May 24, 1934, which required at least five years' residence in the United States previous to his eighteenth birthday, which means that he was required to become a resident of the United States prior to his thirteenth birthday. However, the 1934 Act was superseded by the Nationality Act of 1940, 8 U.S.C.A. § 601(g) and (h). The interpretation or meaning to be ascribed to paragraphs (g) and (h) is not entirely clear. Paragraph (g) provides: "A person born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who, prior to the birth of such person, has had ten years' residence in the United States or one of its outlying possessions, at least five of which were after attaining the age of sixteen years, the other being an alien * * *." Admittedly, Lee You Fon, father of the plaintiffs, had not had ten years' residence in the United States; however, the paragraph contains the following proviso: "That, if the child has not taken up a residence in the United States or its outlying possessions by the time he reaches the age of sixteen years, or if he resides abroad for such a time that it becomes impossible for him to complete the five years' residence in the United States or its outlying possessions before reaching the age of twenty-one years, his American citizenship shall thereupon cease."

We think by this proviso it was intended to increase from thirteen years, as provided by the 1934 Act, to sixteen years, as the time when a person born outside of the United States must become a resident of this country or suffer a divestment of American nationality. This view is strengthened by paragraph (h), which provides: "The foregoing provisions of subsection (g) concerning retention of citizenship shall apply to a child born abroad subsequent to May 24, 1934." Lee Wing Foo, as already noted, was born subsequent to May 24, 1934, to wit, August 5, 1935. The language of paragraph (h) indicates that it was intended to supersede the 1934 Act because it is made applicable to a child born abroad subsequent to May 24, 1934, which was the exact date when the 1934 Act became effective. We know of no case where the precise question has been considered but our study of the various provisions of the statute leads us to the conclusion that plaintiff, Lee Wing Foo, is entitled, as held by the District Court, to the benefit of the 1940 Act, which required residence in this country not later than his sixteenth birthday.

Even so, however, defendant advances another obstacle to an affirmance of the judgment as it relates to Lee Wing Foo, that is, that he did not become a resident of this country prior to his sixteenth birthday. We have heretofore set forth the finding of the District Court and its conclusion on this phase of the case and need not repeat. The evidentiary showing supports the finding, and the weight of authority, admittedly not too impressive, sustains the conclusion. Uyeno v. Acheson, D.C., 96 F.Supp. 510, 520; DiGirolamo v. Acheson, D.C., 101 F.Supp. 380, 382, and Hong v. Acheson, D.C., 110 F.Supp. 60, 62. We agree with the ' reasoning contained in the last named case.

We have not overlooked the importance which the defendant attaches to the testimony of an expert witness to the effect that blood tests showed that Lee Wing Foo was not the son of Lee You Fon. We think it would be futile to relate this testimony in detail, including the discrepancies and contradictions asserted by the plaintiffs to exist. However valuable or important such testimony may be, we know of no rule which makes it conclusive. The District Court, evidently in view of the entire factual situation, did not credit the testimony of the expert. We think this was clearly within the province of the trial court and find no occasion to disturb his action in this respect.

The judgment appealed from is Affirmed.