**Felix TIJERINA, Plaintiff,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, Defendant.**

**Civ. A. No. 8113.**

United States District Court
S. D. Texas, Houston Division.

May 25, 1956.

Philip J. Montalbo and W. J. Knight, Houston, Tex., for plaintiff.

Malcolm R. Wilkey, U. S. Atty., and Sidney L. Farr, Asst. U. S. Atty., Houston, Tex., for defendant.

INGRAHAM, District Judge.

Plaintiff, Felix Tijerina, seeks a declaratory judgment adjudicating and determining that he is a native-born citizen of the United States of America. This relief is sought in his complaint against Herbert Brownell, Jr., Attorney General of the United States, T. C. Carpenter, Acting Officer-in-Charge of the office of the Immigration and Naturalization Service at Houston, Texas (pro se and as successor in office to L. D. Crossman, former Officer-in-Charge), and E. L. Brimberry, an Immigration Inspector stationed at Houston. The latter two defendants were dismissed from the suit upon their motion urging that they were not proper parties, leaving the Attorney General as sole defendant.

Defendant urged his motion to dismiss plaintiff's suit for want of jurisdiction, claiming that there has been no denial of plaintiff's rights or privileges as a national of the United States, by any Department or Agency thereof, on the ground that plaintiff was not a national of the United States. Upon the trial of the case, the court announced that the motion would be taken under advisement with the case and that the court would rule on the motion after a full hearing of the evidence.

Consideration will first be given to defendant's motion to dismiss. It appears that a controversy was engendered between the Immigration and Naturalization Service of the United States Department of Justice and the plaintiff, which continued over a period of time. Incidents in such controversy were as follows:

(a) In 1940 the Immigration and Naturalization Service of the United States initiated an investigation and inquiry into plaintiff's American citizenship, asserting that doubts were cast thereon by the following documents:

(1) An application for an immigration visa for entry into the United States signed and sworn to by plaintiff on July 20, 1925, in which he stated that he was born in General Escobedo, Nuevo Leon, Republic of Mexico, on April 29, 1905.

(2) Certified copy of a record of birth of a male child by the name of Feliberto Tijerina to Dionicia Villareal Tijerina and Rafael Tijerina, stating that the birth was recorded in the official birth records of the Village of General Escobedo, Nuevo Leon, Republic of Mexico, July 29, 1905.

The investigation and inquiry was referred to Inspector Autrey of the Immigration and Naturalization Service. At the conclusion of such investigation and inquiry, Inspector Autrey recommended to plaintiff that he obtain a delayed birth certificate under the provisions of the laws of the State of Texas, but no formal findings were made.

(b) In May 1953 plaintiff and his wife filed with the Immigration and Naturalization Service a request for leave to file a petition for naturalization of their adopted son, Felix Tijerina, Jr., a Mexican national. In September 1953, prior to the filing of the petition for naturalization, plaintiff was again confronted with the aforesaid documents casting doubt on his American citizenship.

(c) Based on the documents in question, Naturalization Examiner Elsenbroich moved for and obtained a continuance of the petition to naturalize plaintiff's adopted son for a period of 30 days.

(d) Contemporaneous therewith, Inspector Brimberry, of the Immigration and Naturalization Service, denied that plaintiff was an American citizen and warned plaintiff that he would be subject to arrest should he leave this country and attempt to return. Inspector Brimberry advised and urged plaintiff to file a petition for naturalization.

(e) During a recess of the hearing held by Naturalization Examiner Elsenbroich on the question of whether plaintiff's adopted son could be naturalized, Inspector Brimberry, who had conducted the investigation, denied plaintiff's American citizenship and advised plaintiff that as a Naturalization Officer he would not be bound by the findings of the Naturalization Examiner, and threatened plaintiff that if he left the United States for Mexico and sought to return, he would be arrested as an alien seeking admission to this country and required to make proof of his citizenship in a special inquiry proceeding.

(f) Thereafter, on July 10, 1954, plaintiff returned from a visit to Mexico City by commercial airline. Upon plaintiff's arrival at the Houston International Airport, he was met by Inspector Brimberry, who arrested plaintiff, asserted before plaintiff and others that plaintiff was not a citizen of the United States, questioned plaintiff's right to enter the United States, threatened to return him to Mexico, and threatened the carrying airline with penalties of law for transporting an alien. After a brief detention of plaintiff, Inspector Brimberry released plaintiff under orders to report to a special inquiry officer at the Houston office of the United States Immigration and Naturalization Service the following Monday, July 12, 1954.

(g) On July 12, 1954, a Special Inquiry Officer was assigned to hold a special inquiry proceeding to determine the admissibility of plaintiff as a native-born American citizen, and on that date plaintiff appeared in person before said Spe-

cial Inquiry Officer and said proceeding was postponed by said Officer to a date to be later determined, pending the final hearing of which plaintiff was released under parole with orders to report to the Inquiry Officer upon the resumption of the inquiry proceeding.

(h) Plaintiff's request for permanent passport was refused by the United States Department of Justice pending final disposition of this cause.

■ The Supreme Court established in Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320, that a dispute between a citizen and an administrative agency regarding the status of citizenship presents a justiciable controversy, with respect to which Federal Courts have jurisdiction under the Declaratory Judgments Act, 28 U.S.C.A. § 2201. In this case administrative action was pending but held in abeyance at the time the suit for declaratory judgment was filed. The Supreme Court, in effect, sustained the Court of Appeals in holding that jurisdiction under the Declaratory Judgments Act might be rested upon threats of deportation and declarations made by administrative officers that the plaintiff was an alien.

Following this decision it has been held consistently that denial of citizenship or eligibility for citizenship by an administrative officer creates a controversy over which a Federal Court may exercise jurisdiction to enter a declaratory judgment. McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173; Brassert v. Biddle, 2 Cir., 148 F.2d 134; Acheson v. Yee King Gee, 9 Cir., 184 F. 2d 382; Acheson v. Mariko Kuniyuki, 9 Cir., 189 F.2d 741; Podea v. Acheson, 2 Cir., 179 F.2d 306. It was not held in any of these cases that it was necessary in order to obtain relief by way of declaratory judgment, to establish that administrative procedure for review of the action complained of existed. In fact, in many cases relief by way of declaratory judgment was granted where the administrative agency simply refused to recognize the plaintiff's claim of citizenship. Lee Wing Hong v. Dulles, 7 Cir., 214 F.

2d 753; Ow Yeong Yung v. Dulles, D.C., 116 F.Supp. 766; Nuspel v. Clark, D.C., 83 F.Supp. 963; Wong Ark Kit v. Dulles, D.C., 127 F.Supp. 871. In Chin Wing Dong v. Clark, D.C., 76 F.Supp. 648, it was held that the plaintiff had a right to bring a declaratory action even though the denial of his citizenship was unaccompanied by an intention to take action.

Lee Wing Hong v. Dulles expressly dealt with the contention here made that the right to a declaratory judgment cannot rest upon a denial of the claimant's citizenship without there being a denial of a right or privilege of the claimant as a citizen of the United States. In that case, plaintiffs were refused the issuance of passports by the American Consul in Hong Kong on the ground that their claims to identity as the children of a native-born American citizen were fraudulent. The plaintiffs filed suit for declaratory judgment in the District Court for the Northern District of Illinois and obtained a judgment granting them the relief prayed for, which judgment was affirmed by the Court of Appeals for the Seventh Circuit. The Government contended, as it does here, that the plaintiffs could not obtain relief by declaratory judgment without establishing that they had been denied a right or privilege as a national of the United States, and that the adverse finding of identity was not a denial of such right or privilege. In disposing of this contention the court said [214 F.2d 757]:

"In our judgment, plaintiffs' claim to nationality and defendant's refusal to issue passports essential to plaintiffs' rights to enter the United States engendered a controversy between the parties of which the court acquired jurisdiction both by the express terms of Sec. 903 and by the Declaratory Judgments Act, 28 U.S. C.A. § 2201."

While the above case dealt with the provisions of the Nationality Act of 1940, and particularly Section 903, Title 8 U.S. C.A., I do not find in Section 1503 of 8 U.S.C.A., the Immigration and Natural-

ization Act of 1952, any expression of Congressional intent that the rule announced in that case would not now apply. Certainly there is no express language in Section 1503 excluding the possibility of relief by way of declaratory judgment in the case of justiciable controversies over the status of citizenship in instances where that statute does not apply, such, for example, as here, where a real and substantial controversy exists but no administrative procedure is provided to resolve it.

■ In view of the holding of the Supreme Court in Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938, that the Fifth Amendment to the Constitution of the United States guarantees to every citizen a judicial termination of his status, Title 8, Section 1503, if it be construed as denying a judicial remedy to a citizen in a controversy affecting his citizenship otherwise justiciable such as the case at bar, would be unconstitutional.

■ I am of the opinion that the controversy engendered between plaintiff and the functionaries of the United States Immigration and Naturalization Service, and their conduct with respect to plaintiff over the years, were a denial of plaintiff's rights and privileges as an American citizen on the ground that plaintiff was not a national of the United States, and conclude that defendant's motion to dismiss for want of jurisdiction should be denied and overruled.

Considering the case on the merits, I find, from a preponderance of the evidence, that plaintiff, Felix Tijerina, was born at Sugarland, in Fort Bend County, State of Texas, on April 29, 1905, the son of Rafael Tijerina and Dionicia Villareal Tijerina. Plaintiff so testified, which he was permitted to do over objection. One of his sisters so testified from matters of common repute in the family and it was stipulated that two other sisters would so testify if called. Delayed birth certificates, certified by the County Court of Fort Bend County, Texas (Plaintiff's Exhibit 3) and by the Texas Bureau of Vital Statistics (Plaintiff's Exhibit 4) were admitted in evidence. Other supporting evidence was heard and considered. The prima facie case made by plaintiff was not overcome by defendant.

■ It appears from the evidence that plaintiff, on July 28, 1925, signed and swore to an application for an immigration visa for entry into the United States at Laredo, Texas, in which he stated that he was born in General Escobedo, Nuevo Leon, Republic of Mexico, on April 29, 1905. Plaintiff concedes that he signed this document on July 28, 1925, and that he submitted it to the officials of the State Department of the United States at Laredo, Texas, for the purpose of obtaining an immigration visa to enter the United States. Defendant contends that this is an admission and assertion by plaintiff of his foreign birth. I accept plaintiff's explanation of this incident wherein he claims that at the time of the incident of 1925 he had gone to Mexico for the first time in his life, not knowing that he would be required to produce evidence of his birth upon his return. Upon attempting to return to this country, being Mexican in appearance, he was detained and his right to enter was questioned. Possessing no documentary evidence of his American citizenship, he was advised that the simplest way to gain admittance would be to apply for an immigration visa for entry as a Mexican national, which he did as an expediency.

I find that the controversy engendered between the Immigration and Naturalization Service of the United States Department of Justice and plaintiff, as detailed above, was a denial of plaintiff's rights and privileges as an American citizen.

I conclude that plaintiff is entitled to a declaratory judgment that he is a native-born citizen of the United States of America.

This will be filed as findings of fact and conclusions of law.

Copies hereof will be forwarded by the Clerk to counsel of record, who will draft and submit judgment conforming herewith.