**SCOTT v. McGRATH, Attorney General of United States.**

Civ. No. 10021.

United States District Court
E. D. New York.

April 11, 1952.

Robert Leon Horn and William Canton, New York City, for plaintiff.

Frank J. Parker, U. S. Atty., Nathan Borock, Asst. U. S. Atty., Brooklyn, N. Y., for respondent.

GALSTON, District Judge.

This is an action brought pursuant to Section 503 of the Nationality Act of 1940, as amended, 8 U.S.C.A. § 903, in which the plaintiff seeks a judgment declaring him to be a national of the United States. The plaintiff alleges residence in the County of Queens, City and State of New York. It is also alleged in the complaint that:

"6. Plaintiff was born in Tiflis, Russia on November 12, 1917, a citizen of the United States by virtue of the provisions of Section 1993 of the U.S. Revised Statutes (Comp.Stat. Sec. 3947)."

The specific cause for the present action for a declaratory judgment is the refusal of the Immigration and Naturalization Service of the Department of Justice to grant a preference quota visa for the plaintiff's alleged mother, Stephania M. Scott. The failure of the Immigration and Naturalization Service to recognize the plaintiff as an American citizen for the purpose of obtaining the preference quota visa for his mother, it is alleged, threatens the plaintiff with the forfeiture of substantial rights as an American citizen.

In his answer the defendant admits the refusal to grant the plaintiff's application, but alleges that his action "was made necessary by the plaintiff's refusal to submit proof of his claimed citizenship and of his relationship to Stephanie (sic) M. Scott, his alleged mother."

The plaintiff relies on that part of Section 1993 of the Revised Statutes reading as follows:

"All children * * * born out of the limits and jurisdiction of the United States, whose fathers *. * * may be at the time of their birth citizens * * * are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States."

The Act of March 2, 1907, c. 2534, sections 6 and 7, 34 Stat. 1229, which incorporates Revised Statute § 1993, continues as follows:

"all children * * * who continue to reside outside the United States shall, in order to receive the protection of this Government, be required upon reaching the age of eighteen years to record at an American consulate their intention to become residents and remain citizens of the United States and shall be further required to take the oath of allegiance to the United States upon attaining their majority."

It may be noted that the defendant does not set up as a defense the failure of the plaintiff to perform any affirmative acts required by law to retain his citizenship, once obtained. At the trial, the Assistant United States Attorney representing the defendant declared that he does not expect the plaintiff to prove the absence of any act of expatriation, and that if there has been an act of expatriation, the defendant will waive it.

In the plaintiff's petition for the issuance of an immigration visa on behalf of his mother, he alleged that he was born on November 12, 1917 at Tiflis, Russia; that his parents were married in 1915 at Piatigorsk, Russia; and that his father, Harry Winfield Scott, had been born on December 18, 1872 at Philadelphia, Pennsylvania. He also stated in the petition that his father had resided in the United States from his birth to 1912; had lived in France in 1912 and in other countries including Russia; and had died in Odessa, Russia.

In a letter accompanying the petition, which was filed in October, 1947, the plaintiff stated that he was not attaching the "required documents" because they had been "deposited at the U. S. Consulate General, Warsaw, Poland, December 1939." Among the documents so deposited, according to the letter, were the plaintiff's birth certificate, a Russian permit of entry, and the father's certificate of death. No documentary proof of the father's place of birth, nor of his parents' marriage, was ever submitted to the Immigration and Naturalization Service.

The plaintiff is at present living in Brussels, Belgium. Stephania Krzswka Scott, alleged to be plaintiff's mother is living at present in Surrey, England. The only proof offered at the trial were depositions and documents.

But plaintiff was unable to produce, at the trial, any documentary evidence directly establishing the place of birth of his father or of the marriage of his parents. The evidence indicates that inquiries were made on behalf of the plaintiff to the Department of Health, Commonwealth of Pennsylvania, and to the Board of Health, Pottsville, Schuylkill County, Pennsylvania, with respect to the birth record of Harry Winfield Scott. The answers to these inquiries stated that no records of births were kept prior to 1906, and 1893, respectively.

The deposition of "Stefania (sic) Krzswka Scott," taken at The American Embassy, London, England, discloses that the deponent was married to Harry Winfield Scott in Piatigorsk in June, 1915, and that a son, George Albert Scott, was born of the marriage on November 11, 1917. She stated that her husband had told her that he was born in Philadelphia, Pennsylvania. The deposition includes the following:

"Interrogatory #17. Q. Did you ever have any documents of your husband's that indicated the country where he was born? Answer. I have only

seen the visa he had which was issued in Smyrna, Turkey. It was a sort of permission to enter Russia. I remember a sort of big white paper, which was supposed to be issued from America, and the visa to enter Russia was stamped on it in Smyrna, Turkey.

"Interrogatory #19. Q. If unable to produce these documents, please explain what happened to them. Answer. It was given to the American Consulate in Odessa in approximately March 1919 by me after my husband died."

The defendant concedes that United States passports were issued by the State Department to Harry Winfield Scott in 1906, 1910, 1911 and 1912. He also concedes that a United States passport was issued to the plaintiff in 1946.

Photostatic copies of the applications of Harry Winfield Scott for passports were put in evidence. The first application was made to the Consulate of the United States at Hanover, Germany, on February 27, 1906. In it, the applicant states that he was born at Pottsville, Pennsylvania, on December 18, 1870. There also appears a signed statement by a Leo Meyer, certifying that he, Meyer, knows Harry Winfield Scott personally and knows him to be a native-born citizen of the United States. The next application is dated February 23, 1910, at the United States Legation at Athens, Greece. The applicant stated therein that he was born at "Philadelphia, in the State of New York, on or about the 18 day of December, 1870". Under the word, "Identification", there appears the notation:

"Old passport and documentary evidence."

The third application for a passport, dated August 10, 1911, at the United States Embassy at Berlin, Germany, gives the applicant's place and date of birth as:

"Philadelphia, in the State of Pennsylvania, on or about the 18th day of December, 1872."

The application indicates that the proof submitted as to the identity of the applicant was an "expired passport". The final application is dated April 20, 1912, at the American Embassy, St. Petersburg, Russia, and gives the birthplace and date as Pottsville, Pennsylvania, December 18, 1872. Identification of the applicant was again by "old passport". The 1910 and 1911 applications state thereon that an "emergency passport" was issued each time, good for six months.

The plaintiff has also put in evidence a photostatic copy of a statement, designated "Opinion of Officer Taking Affidavit," dated December 29, 1939, Warsaw, Poland, and signed by a William R. Morton, American Vice Consul. Apparently, this statement was attached to the plaintiff's application for a United States passport. Among other things, it states:

"The applicant, George Albert Scott, claims that he was born at Tiflis, Russia on November 12, 1917 as the son of Harry Winfield Scott and Stefania (sic) Krzewska. The baptismal certificate submitted by the applicant has been legalized by the Ministry of Interior under date of March 23, 1919 at Odessa, giving the applicant the right to bear his father's name on the basis of the marriage of his parents, which, he claims, took place in the summer of 1918." (Emphasis added.)

The plaintiff's deposition, taken before the American Consul at Brussels, Belgium, December 3, 1946, states that the plaintiff came to the United States in June, 1947 on an American passport issued at Hamburg, Germany, by the American Consulate General; that he resided for about one year at 3405 Grand Avenue, Astoria, Long Island, New York; and that he left the United States in June or July, 1948, for Brussels, Belgium. The deposition also indicates that another passport was issued to the plaintiff at Brussels on January 22, 1951, which passport expired on May 22, 1951. The issuance and subsequent expiration of the 1951 passport is confirmed by a letter of the American Consul at the American Embassy in Brussels. The plaintiff also stated in his deposition that he has never taken an oath, made an affirmation or other formal declaration of al-

legiance to a country other than the United States of America.

There is no evidence showing that any inquiry was ever made to adduce proof concerning the residence or birth of the plaintiff's father in the United States from people who had personal knowledge of such facts. To a question put by the Court, the plaintiff's attorney stated that the plaintiff did not even have an address in Pottsville or Philadelphia which might be used as a starting point for an inquiry. The 1906 application of Harry Winfield Scott for a passport lists his permanent address in the United States as 110 31st Street, New York, N. Y. There is, however, no evidence that any inquiries were made at this address.

Narrowed down, the plaintiff's whole contention is that passports were issued both to Harry Winfield Scott, the purported father, and to himself by the State Department, and that certain documents were allegedly submitted to the State Department in connection with the applications for passports.

█ The Supreme Court, in Urtetiqui v. D'Arcy, 9 Pet. 692, 34 U.S. 692, 9 L.Ed. 276, ruled that a passport, per se, is not legal and competent evidence of the fact of citizenship. The Court, 9 Pet. at page 699, stated as follows:

> "It (the passport) is a document which, from its nature and object, is addressed to foreign powers; purporting only to be a request that the bearer of it may pass safely and freely; and is to be considered rather in the character of a political document, * * * and which, by usage and the law of nations, is received as evidence of the fact (of ctizenship). But this is a very different light from that in which it is to be viewed in a court of justice, where the inquiry is as to the fact of citizenship. It is a mere *ex-parte* certificate; and if founded upon any evidence produced to the Secretary of State establishing the fact of citizenship, that evidence, if of a character admissible in a court of justice, ought to be produced upon the trial, as higher and better evidence of the fact."

█ Aside from the passports, the plaintiff's proof rests upon statements of consulate officers, applications for passports and the depositions. As for the statements of consulate officers, it appears that such statements were based either upon the fact that passports were issued to the plaintiff, or upon statements made to the officials by the plaintiff. If a passport is not competent evidence of citizenship, statements based thereon can hardly be regarded as any more competent of the fact. Statements of the plaintiff, whether directly made to officers or contained in passport applications are, of course, self-serving declarations. In determining the evidentiary weight to be given to the depositions, consideration must likewise be given to the fact that they are declarations of parties in interest.

It is noted that there are certain unexplained discrepancies in the evidence presented. The father's place of birth is stated to be both Philadelphia and Pottsville, Pennsylvania. The date of the father's birth is listed both as December 18, 1870 and December 18, 1872. The marriage of the plaintiff's parents is placed in June, 1915, and in the summer of 1918.

There remains, as documentary evidence, very little other than the statement of Leo Meyer in the 1906 application of Harry Winfield Scott, certifying that the witness has personal knowledge that the applicant is a native-born citizen.

Where there is so little proof and that which has been presented is of a secondary character, it is important that all the evidence which is considered relevant and material be before the Court. The plaintiff argues that the various documents which were allegedly turned over to officers of the State Department are the best evidence of the facts which the Immigration and Naturalization Service demand. Included among these documents are those listed in the plaintiff's notice to produce, directed to the defendant, as follows:

> "1. All of the data and documents delivered by Stefania (sic) Krzewska Scott in or about February or March 19,

1919, to the American Consul at Odessa, Russia, including:

"a.   Report of death of Harry Winfield Scott.

"b.   All documents relating to said Harry Winfield Scott.

"c.   The United States Passport of Harry Winfield Scott.

*   *   *   *   *   *

"6.   The baptismal certificate of George Albert Scott, submitted by George Albert Scott, to the American Consul at Warsaw, Poland, in or about December 1939.

"7.   The letter of the Dept. of State, dated 3/15/38.   File No. 130, Scott, Harry Winfield."

■   The letter of William R. Morton, American Vice Consul, refers to the baptismal certificate, indicating that the certificate states that Harry Winfield Scott came from Philadelphia.   As already indicated, the certificate also gives the plaintiff the right to bear the name of his father, indicated to be Harry Winfield Scott.   The baptismal certificate may, therefore, be considered some evidence that the plaintiff is the son of Harry Winfield Scott and that the father was born in the United States.

■   The plaintiff contends that the failure of the defendant to produce these documents excuses him from further efforts to obtain them.   Furthermore, he contends in effect, since there apparently is no other documentary evidence which is available to the plaintiff, the defendant has no right to refuse to recognize his citizenship status on the ground of the failure to produce documentary proof.   Circumstances might well govern the weight of proof necessary to establish satisfactorily the fact of citizenship.

The plaintiff's notice to produce is directed to the Attorney General of the United States, as the head of the Treasury Department.   The documents which the plaintiff feels are pertinent were submitted to the State Department.   There is no showing that any inquiry was made to the State Department with respect to these particular documents.

In view of all the circumstances, before the Court can render a proper judgment based on all the evidence considered relevant and material, the plaintiff ought to take reasonable steps to obtain from the State Department the documents alleged to be in the Department's possession and control.

Therefore, the plaintiff's complaint here is dismissed without prejudice to his instituting another action after taking the steps indicated above.

Finally it may be noted that though the defendant has waived a defense of expatriation, in the circumstances appearing herein such a defense may not be without merit.