### LEE MON HONG v. McGRANERY, Atty. Gen.
### No. 31093.

United States District Court
N. D. California, S. D.
March 12, 1953.

Jackson & Hartogs, San Francisco, Cal., for plaintiff.

Chauncey Tramutolo, U. S. Atty., and Arlin W. Hargreaves, Acting Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

This is an action brought under Section 503 of the Nationality Act of 1940, 8 U.S. C.A. § 903, by which Lee Gum Shilk, a minor, (hereinafter referred to as "plaintiff") seeks a judgment of this court declaring him to be a national of the United States.

Plaintiff claims to have been born in Gor On Village, Toyshan District, China, on February 11, 1935, the lawful blood son of Lee Mon Hong.

It appears from the record that plaintiff arrived at the port of San Francisco on January 17, 1951; that after a hearing before the Immigration authorities, at which plaintiff was represented by counsel, his application for admission was denied; and that this ruling was appealed and the appeal dismissed. It further appears that the defendant concedes the United States citizenship of Lee Mon Hong, the alleged father; that Lee Mon Hong was in China during the period which would make paternity possible and entered the United States several months before plaintiff's alleged birth date; that at the time of his entry he informed the Immigration authorities that he had a wife and two sons living in Gor On Village and that his wife was then six or seven months pregnant; that the results of blood tests recently given to plaintiff and Lee Mon Hong show paternity is possible.

By stipulation of counsel the record of the Board of Special Inquiry hearing, together with all its exhibits, was introduced in evidence. This includes not only the transcript of proceedings in the instant case but also transcripts and affidavits made in connection with the admission of several of Lee

Mon Hong's brothers and sisters at times long prior to plaintiff's application for admission. These contain references to Lee Mon Hong's wife and three sons, the birth date of the youngest, Lee Gum Shilk, agreeing with that claimed by plaintiff. The court is convinced that Lee Mon Hong had a son Lee Gum Shilk born on that date. The only question is whether the plaintiff is that son.

■ An action brought under Section 503 of the Nationality Act of 1940 is an independent suit and not a review of the Board of Special Inquiry proceedings, Wong Wing Foo v. McGrath, 9 Cir., 196 F. 2d 120. Where, as here, the record of such proceedings is introduced in evidence, it will be considered together with all the other evidence adduced on the trial. If the court is convinced, from all the evidence, that the plaintiff has sustained the burden of proof resting upon him, he is entitled to a declaration of United States nationality. The court is so convinced in this case.

The record discloses that Lee Mon Hong claimed a son, Lee Gum Shilk, on his income tax returns and selective service form and that he sent money for the support of Lee Gum Shilk both before and during the approximately two years that the boy was living in Hong Kong, attending school and waiting to come to the United States. There was received in evidence a photograph of plaintiff with a woman obviously his mother, which Lee Mon Hong identified as a picture of his wife and son taken in Hong Kong shortly after the boy arrived there. The woman was likewise identified as Lee Mon Hong's wife by his brother Lee Mon Pung and Mon Pung's wife, Yee Gim Gay. Both Lee Mon Pung and Yee Gim Gay testified that they were living in Gor On Village when Lee Gum Shilk was born and identified the plaintiff as Lee Gum Shilk. Yee Gim Gay further testified that she saw the plaintiff almost every day prior to her leaving the village in 1940.

Plaintiff's mother was not available as a witness. Upon inquiry the court was informed by counsel that the Immigration and Naturalization Service had approved her petition to proceed to the United States but the American Consulate General at Hong Kong had not issued the necessary documentation.

In denying plaintiff's application the Board of Special Inquiry relied on what it deemed certain major discrepancies, most impressive of which was plaintiff's inability to identify correctly by name all of his alleged cousins living in Gor On Village. This, too, was stressed by the defendant in attempted impeachment on cross-examination. It is true that, as shown by the record, Gor On Village consisted of only four houses, each occupied by two families and all belonging to the Lee family, but there were approximately twenty children. The record further shows that plaintiff properly stated the number, sex and ages of the persons identified with each family and finally properly identified all but three members by name. In view of the plaintiff's age when he left Gor On Village, the fact that he spent approximately two years in Hong Kong before coming to the United States, and the nervous strain, whether conscious or unconscious, that anyone testifying in strange surroundings immediately upon arrival in a strange country would be subject to, it is not surprising that he forgot the names of some of his many cousins. Had he been letter-perfect in his answers to *all* of the examiner's questions the court might be more inclined to believe him an imposter reciting memorized material.

■ The fact that the plaintiff has the burden of proof does not raise a presumption that he and his witnesses will commit perjury; nor does the fact that they testify through an interpreter. The court observed plaintiff and his witnesses and is convinced that they were telling the truth. Since their testimony, if believed, establishes the fact that plaintiff is the lawful blood son of Lee Mon Hong, a United States citizen, born after Lee Mon Hong came to the United States, it follows that plaintiff is entitled to a declaration of United States nationality. It is, therefore,

Ordered that there be entered herein, upon findings of fact and conclusions of law, a judgment declaring plaintiff to be a national of the United States and that the respective parties pay their own costs.