AKIYO OYE v. ACHESON, Secretary of State.

No. 29633.

United States District Court
N. D. California, S. D.
March 13, 1953.

A. L. Wirin and Fred Okrand, Los Angeles, Cal., for plaintiff.

Chauncey Tramutolo, U. S. Atty., and Edgar R. Bonsall, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

This is an action brought under Section 503 of the Nationality Act of 1940, 8 U.S. C.A. § 903, whereby plaintiff seeks a judgment of this court declaring her to be a national of the United States. Defendant contends that plaintiff, who is a citizen by birth, lost her nationality by virtue of the provisions of 8 U.S.C.A. § 801(d) which provides that "A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * * (d) Accepting, or performing the duties of, any office, post, or employment under the government of a foreign state or political subdivision thereof for which only nationals of such state are eligible; * * *." Plaintiff was a teacher in the Japanese elementary schools and the first question for decision is whether such position was one for which only Japanese nationals were eligible. If this question is answered affirmatively, there is the further question of whether her teaching activity was of the free and voluntary nature that would result in her expatriation.

The record discloses the following facts. Plaintiff was born in Lodi, California, and at the age of nine accompanied her mother and older sister to Japan to visit her maternal grandparents. She expected to return to the United States after her graduation from high school in March of 1941. Her father became ill, however, and returned to Japan in 1939 and plaintiff had to stay to take care of him while her mother and sister returned to the United States. At her father's insistence she attended normal school and after completing her course she was required by the Japanese Government to take a teaching position. The title of her first position was *Kundo*. In 1946 the position which she held was classified as provincial educational official (*Chiho Kyokan*). At no time was plaintiff asked whether she was a Japanese or American national. Plaintiff quit her teaching position in 1947 in order to make arrangements to return to the United States. The American Consulate at Yokohama denied her application on the ground that in 1946 the position she held became one for which only Japanese nationals were eligible.

The defendant has offered in evidence no Japanese law requiring a teacher in Japa-

nese grammar schools to be a national of Japan and, indeed, it appears there is no such specific law. Defendant would have the court draw an inference of such requirement from the provisions of Paragraph 2 of Article 24 of the Japanese Nationality Law of 1899, which reads as follows:

"A person who actually occupies an official post, civil or military, does not lose Japanese nationality notwithstanding the provisions of the preceding eight Articles until after he or she has lost such official post."

and from Paragraph 1 of Article 9 of the Japanese Pension Law which, so far as pertinent, reads:

"A person entitled to a pension in the form of an annuity shall lose his or her right in one of the following cases:

"3. When he or she has lost Japanese nationality."

Since there is no evidence that a Japanese elementary school teacher came within the National Pension Law, for the purposes of this case it can be disregarded.

Paragraph 2 of the Japanese Nationality Law of 1899, Article 24, quoted above, must be read in conjunction with the "preceding eight Articles" to which it refers. Those articles set forth the ways by which a Japanese national can be expatriated. To say that an act of expatriation will not become effective until the person has lost his official post is not to say that *only* a Japanese national could occupy the post. Such an inference is unwarranted, particularly in view of the fact that Japanese law does specifically provide that only Japanese nationals can hold certain high Government offices. When the law-making body has thus set forth, in terms, such requirement for certain posts this court will not extend it to positions as to which the law is silent.

■ Proof to bring about a loss of citizenship must be " 'clear, unequivocal, and convincing'—'it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt'." Schneiderman v. United States, 320 U.S. 118, 125, 63 S.Ct. 1333, 1336, 87 L.Ed. 1796; Baum-

gartner v. United States, 322 U.S. 665, 670, 64 S.Ct. 1240, 88 L.Ed. 1525. The burden of proof is upon the defendant. Schioler v. Secretary of State of United States, 7 Cir., 175 F.2d 402, 403. Where, as here, the facts needed to establish the basis for expatriation are a matter of foreign law, they are questions of fact to be proved. That the defendant has failed to make such proof is apparent. As held in Furuno v. Acheson, D.C., 106 F.Supp. 775, and Naito v. Acheson, D.C., 106 F.Supp. 770, 775, "the evidence presented by the defendant [did] not, even remotely, rise to the level of the exacting standard of proof required to deprive a person of citizenship." While neither of these cases involved the position of teacher, each was concerned with employment under the Japanese Government and in each case the defendant sought to have the court draw the same inference from the same statutes as in the instant case.

■ Since the defendant has failed to prove that the position held by plaintiff was "any office, post or employment under the Government of a foreign state or political sub-division thereof for which only nationals of such state are eligible," the question of whether plaintiff's teaching activity was free and voluntary is not of controlling importance. It is one of the issues raised, however, and will be disposed of.

The evidence shows that plaintiff attended the Japanese normal school in submission to her father's wishes; that upon her graduation she had no alternative but to teach; and that the Japanese Government refused to permit her to leave the teaching profession for any other type of work. Since she had to earn money for food and shelter, she had to teach. At no time did she have reason to believe that by earning her living in the only way open to her she was imperiling her United States citizenship. This is a very different situation from that in Savorgnan v. United States, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287, relied on by defendant. There the petitioner knowingly and voluntarily became an Italian citizen, later claiming that she did not intend to relinquish her United States citizenship by doing so. Here the plaintiff

did no act voluntarily and the essential element is thus lacking.

In view of the foregoing it is, therefore, by the court

Ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of the plaintiff declaring her to be a citizen and national of the United States and as such entitled to all the rights and privileges of the same, and that the respective parties pay their own costs.