**Johannes EELHART, Plaintiff,**

v.

**John Foster DULLES, Secretary of State of the United States of America, Defendant.**

United States District Court
S. D. New York.
Oct. 20, 1955.

---

Robert Salomon, New York City, Jacob Freed Adelman, New York City, of counsel for plaintiff.

Paul W. Williams, U. S. Atty., by George M. Vetter, Jr., Asst. U. S. Atty., for the defendant.

WEINFELD, District Judge.

Plaintiff brings this action pursuant to 8 U.S.C. § 903 * for a judgment declaring that he is a national and citizen of the United States. He was born in Paterson, New Jersey of Dutch parents, and at age five he was taken to Holland where he remained until 1949 when he came to the United States on a certificate of identity to prosecute this action. The parties are in accord that the plaintiff acquired duo-citizenship—United States citizenship by birth and Dutch citizenship by parentage. The defendant, admitting that plaintiff is a native born American, urges that he expatriated himself by voting in political elections in the Netherlands. 8 U.S.C.A. § 1481 (a) (5) specifies " * * * a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by * * * voting in a political election in a foreign state * * * ".

Since the fact of the plaintiff's birth in the United States is conceded, the burden of proof on the issue of expatriation is upon the defendant. And the government must establish its defense of expatriation by clear, unequivocal and convincing evidence. Augello v. Dulles, 2 Cir., 220 F.2d 344; Monaco v. Dulles, 2 Cir., 210 F.2d 760. I am of the view that the government has failed to sustain this burden.

The government's case in large measure rests upon documentary and statistical proof, some of which is a summary of original records and also ex-parte and hearsay statements of election officials in the district and city where purportedly the plaintiff cast his votes. It is noted that no testimony was taken of any election official, although the Court is satisfied that such evidence was procurable through interrogatories or oral commission. This procedure would have entailed no greater difficulty or inconvenience to the government than that ordinarily encountered by private litigants. On the contrary, it is likely that the government would have had little difficulty in obtaining the evidence of such officials.

Originally the government contended that the plaintiff expatriated himself by voting in two political elections in the Netherlands on May 17, 1946 and July 26, 1946. But the only proof offered by the government related to the July 26, 1946 election.

Under the laws of the Netherlands a list of residents of municipalities who are deemed qualified to participate in elections for certain legislative representatives is prepared by a city board. Thereafter all such qualified voters are summoned to the polling place to exercise their right to vote. There is a legal obligation to appear but there is no legal obligation to vote. Failure to appear may result in the imposition of a penalty.

* Now 8 U.S.C.A. § 1503.

The plaintiff was summoned to the May 17 and the July 26, 1946 elections to vote as a Dutch citizen. He admits that on each occasion he appeared at the designated polling places as required by the summons but refused to vote, asserting he was an American citizen. He states he was not given a ballot and did not vote. No direct proof was offered that he did vote. However, the government asks the Court to draw an inference that plaintiff voted in the July 26, 1946 election from the circumstance that of a total number of 1281 ballots delivered to election officials in the particular district where plaintiff appeared an exhibit indicates that 1011 voters participated and 270 ballots were marked returns, totalling 1281, and that no entry appears on the official records setting forth that any person in that district stated his refusal to vote. The application of the standard of proof specified in the two cases cited above precludes the drawing of any such inference.

Moreover, the theory advanced to support the suggested inference finds challenge in the very exhibit relied upon. Contained therein is a statement by the Chief Register of Amsterdam in answer to an inquiry by the American Consulate General: "[A]ll voters in this country are obliged by law to appear at the voting location. It is quite possible that Mr. Eelhart did not deposit his ballot; he fulfilled his legal duty at the moment he handed over his convocation; only this—and not the fact that whether he actually voted or not—is stated in the official record of the voting committee * * *". (Exhibit A)

Apart from the foregoing, the defendant's contention is further negatived by the direct testimony of the plaintiff. He impressed me as a truthful witness. His testimony was clear and convincing. His present version of what occurred at both elections when he claims he informed the election officials of his refusal to vote because of American citizenship reflects a consistent position. It finds confirmation in a conference which he had early in 1947 with a representative of the American Consulate at Amsterdam shortly after the elections. On that occasion he asserts he was told by the Consulate representatives that in connection with repatriation procedure it would be necessary in the event he had voted in either of the political elections to sign an affidavit to that effect. He declined to sign any such affidavit, informing the Consul or his representative that he refused to do so because such a statement would be false and contrary to fact. With respect to this conference, the American Vice Consul states: "However, since Mr. Eelhart denied having taken part in the above mentioned elections and signed Form 176 under oath, it was assumed that he had refrained himself from voting."

The statement by the Vice Consul continues: "When Mr. Eelhart was invited to explain the foregoing [with reference to his alleged participation in those two elections], he stated that he called at the election bureau during the first election and informed an official that he could not vote because of his claim to American citizenship, whereupon, according to Mr. Eelhart's statements, his name was crossed out. * * *" (Exhibit B)

Finally, still another exhibit weakens the government's case. This is a statement by the Chief of the Subdivision of Elections offered as part of the government proof (Exhibit E).

"If a voter reports at a polling bureau submitting his summons on the day of election and refuses to accept a ballot, the president must make a notation to this effect * * *. The name of the voter who appeared must be initialed in the copy or the extract of the register of the voters * * *. Therefore a name or number is not deleted, the initials only show that the voter *appeared. Whether he accepted a ballot and voted or not cannot be ascertained from this.*" (Emphasis supplied.)

If the local election officials are not in a position to state from their own records whether or not a man voted, it is difficult to understand how the Court is called upon to draw an inference that

plaintiff voted, particularly so in the light of the burden resting upon the government to establish its case by clear, convincing and unequivocal evidence. The evidence in this case is far from meeting that standard.

Upon all the facts, the Court finds the defendant has failed to sustain his burden of proof and that plaintiff is entitled to judgment in his favor. Appropriate findings of fact and conclusions of law will be entered.