Felix Martinez REYES joined by Jose Martinez, Benjamin Martinez and Guadalupe Martinez, Appellant,

v.

Marcus T. NEELLY, Director of Immigration & Naturalization Service, Appellee.

No. 17435.

United States Court of Appeals Fifth Circuit.

March 10, 1959.

Rehearing Denied April 22, 1959.

Wellington Y. Chew, El Paso, Tex., for appellant.

James E. Hammond, Asst. U. S. Atty., El Paso, Tex. (Russell B. Wine, U. S. Atty., San Antonio, Tex., on the brief), for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging that, upon an immigration show cause hearing, he was found deportable for the reason that he was not, as he was required to be, in possession of an immigrant visa at the time of entry into the United States, plaintiff brought this suit under Sec. 1503, Title 8 U.S. C.A., for a judgment declaring that he was a national and citizen of the United States.

▮ This is another of the many cases,[1] the filing of which the enactment of this statute, with its opportunity for an independent suit with a trial and decision de novo, has brought about. In these cases, just as it is in other civil cases, the burden of establishing in the trial court the truth of the facts alleged is on the plaintiff. In the same way, in an appeal in such cases, the burden is on the appellant to show that the findings of the district judge are clearly erroneous.

While all of these cases are fraught with human interest and this case is especially so because the plaintiff is an old man with a large family of children and their children whose rights as American citizens will stand or fall with him, and the court and everyone concerned in it have taken counsel to afford every possible alleviation of unduly harsh results, the legal principles governing the hearing and disposition of such suits are no different from those governing ordinary civil cases and decisions, and review of decisions in them must conform to those principles. In short, simple and uncomplicated in law as these cases essentially are, each can and must be determined below and here on its particular facts.

In this case these consisted primarily of: the oral testimony in court of the plaintiff; the admission by stipulation into the record of the Immigration hearing; the baptismal certificate, in which the place of birth is not shown, showing plaintiff's baptism in St. Joseph's Church in Fort Davis, Texas, on August 4, 1888; the delayed birth certificate secured by plaintiff, issued April 4, 1945, and affidavits with respect thereto. There was no testimony, however, of any person, including of course the plaintiff, who could or did testify to the fact that Reyes had been born in Fort Davis, Texas, as he

claims. They amounted in substance to no more than a claim by him that: he was born in Fort Davis, Texas, March 30, 1888, and lived in San Antonio del Bravo, Mexico, where he was married, most of his children were born, and where he held office and conducted himself as a citizen of Mexico until 1944, when he entered the United States at Presidio, Texas, and that in 1940 or 1941, when one of the Immigration employees picked up one of his daughters and asked him where he was born, he told him, that "I would have to look it up, I didn't know." In addition, he testified that he found an older brother and got from him the baptismal certificate, above referred to, and he later got his father to swear to the delayed birth certificate, referred to above.

The show cause proceeding, conducted by the Immigration Department, was for the purpose of determining the validity of Reyes' claim that he was a national of, and, therefore, validly in the United States. During that hearing plaintiff testified substantially as he did on the trial of the case and while there was considerably more detail in those proceedings and plaintiff's prior inconsistent acts and statements were more fully explored, they contained nothing of benefit to plaintiff that his own testimony did not afford.

Though at the beginning of the trial, the United States Attorney insisted that it was not a de novo proceeding but was a mere review of the immigration proceeding, the district judge stated that he would determine the matter later and that the plaintiff could offer any testimony that he wanted to, and the case proceeded as a trial de novo and was so determined.

Finding: (1) that petitioner was born in San Antonio del Bravo, Chihuahua, Mexico; (2) that petitioner is not a

1. Cf. De Vargas v. Brownell, 5 Cir., 251 F. 2d 869, 870; Delmore v. Brownell, 3 Cir., 236 F.2d 598; Wong Wing Foo v. McGrath, 9 Cir., 196 F.2d 120; Gee Chee On v. Brownell, 5 Cir., 253 F.2d 814; Lim Kwock Soon v. Brownell, 5 Cir., 253 F.2d 809; Yip Mie Jork v. Dulles, 9 Cir., 237 F.2d 383; Wong Gong Fay v. Brownell, 9 Cir., 238 F.2d 1, and the many cases cited in the notes to Sec. 1503.

national of the United States, and as a conclusion of law that the findings of the Immigration hearing are supported by substantial evidence; he thus affirmatively decided the issues submitted to him for decision, and while his conclusion, that the findings of the Immigration proceeding were supported by substantial evidence, was unnecessary to the decision, it did not in any manner depart or detract from his basic findings.

Here appellant does not claim that the court did not give him a hearing. He stands almost entirely on the proposition that the certificate of citizenship issued by the Immigration Department in effect conferred upon him citizenship which gave rise to the presumption that the plaintiff was a citizen and placed upon the defendant a burden equivalent to that imposed in a denaturalization proceeding.

While the opinion of the Court of Appeals for the Third Circuit, Delmore v. Brownell, note 1 supra, affirming the finding of the district judge that plaintiff was a citizen, does seem to lend some support to this view, the opinion itself recognizes that it is contrary to the opinion in Mah Toi v. Brownell, 9 Cir., 219 F.2d 642, cited by us with approval in De Vargas v. Brownell, 5 Cir., 251 F.2d 870, and with which we wholly agree.

When the evidence as a whole is considered, it is seen that the certificate of citizenship was based upon evidence furnished by plaintiff and that it could have no greater standing or force than that evidence on which the determination was based. In that view we think it clear: that any force that it had has been completely dissipated by the evidence in this case; and that, with the finding of the district judge that the fact of plaintiff's birth in the United States, on which the certificate was purportedly based, does not exist, the proof failed, and the certificate of citizenship failed with it.

No ground appearing for holding that the district judge's findings are clearly erroneous, the judgment is

Affirmed.

RIVES, Circuit Judge (dissenting).

Respectfully dissenting, I would keep constantly in mind that most important part of the judicial function to "administer justice without respect to persons, and do equal right to the poor and to the rich." 28 U.S.C.A. § 453. That certainly does not mean that the more sympathetic the plight of the underdog the more hardhearted and recalcitrant must be the judges in order to do substantial justice. With deference, I hold the firm opinion that my brothers have disregarded several important rules of law, any one of which must command a reversal of this case.

Let us examine this case. Felix Martinez Reyes is a blind, diabetic, seventy-year-old Mexican, having twelve children and more than a score of grandchildren, who has lived in this Country continuously since 1944. On December 13, 1956, a Special Inquiry Officer of the Immigration and Naturalization Service decided that at the time of Reyes' entry into the United States in October, 1944, he was a native and citizen of Mexico and was not in possession of a valid immigration visa, and ordered that, if Reyes failed voluntarily to depart, he should be deported. On appeal to the Board of Immigration Appeals, the decision of the Special Inquiry Officer was affirmed on March 14, 1957. On May 2, 1957, Reyes filed this action seeking a declaratory judgment, under 8 U.S.C.A. § 1503, that he was a national of the United States.

Section 1503 of Title 8 U.S.C.A.,[1] affords to any person within the United

---

1. This section provides in part:
  "(a) If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28, against the head of such department or independent agency for a judgment declaring him to be a national of the United States * * *."

States who claims to be a national and who has been denied such right or privilege by any department or agency of the Government the right to a judgment in the United States courts declaring him to be a national. Before 1940 the only judicial remedy to determine the validity of a deportation or denaturalization order was by writ of habeas corpus directed against the Immigration Authorities, and the courts emphasized that due process required a judicial trial and determination before a resident of the United States asserting United States citizenship could be deported.[2] Section 503 of the Nationality Act of 1940 (then 8 U.S.C.A. § 903) provided such persons the method of obtaining a judicial determination of citizenship by declaratory judgment. This Act was superseded by Section 360 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503, which, except in certain exclusion proceedings not here material and which still afford habeas corpus, continues to afford this right of judicial determination.[3] The issue of citizenship has been so jealously protected that some federal courts have allowed the dual remedy of habeas corpus and declaratory judgment to an alleged citizen.[4] Such a declaratory judgment is a declaration of status which is binding not only on governmental authorities but, also, upon the whole world, it being equivalent to a certificate of naturalization.[5] And the plaintiff has the same burdens and benefits of well-established rules of pleading, procedure, evidence, proof, presumptions, and appellate review in this proceeding under 8 U.S.C.A. § 1503 as fall upon a plaintiff in any civil action, for this proceeding is a trial de novo in its broadest sense, affording absolutely no presumption to the prior administrative ruling.[6]

## I

It is manifest that Reyes had anything but a trial de novo. The District Attorney through dogmatic assertions, the District Judge through a misconception of the law, and the plaintiff's attorney through fatigue and nonadvocacy all played a part in converting the trial into a review of the Immigration Department's ruling. This is salient from the excerpts of the record appearing in the margin.[7] Further, the only conclusion of

**2.** Kessler v. Strecker, 1939, 307 U.S. 22, 34, 35, 59 S.Ct. 694, 83 L.Ed. 1082; Ng Fung Ho v. White, 1922, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938.

**3.** As stated by District Judge Ingraham from this Circuit in Tijerina v. Brownell, 1956, 141 F.Supp. 266, 270:
"In view of the holding of the Supreme Court in Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938, that the Fifth Amendment to the Constitution of the United States guarantees to every citizen a judicial termination (sic) of his status, Title 8, Section 1503, if it be construed as denying a judicial remedy to a citizen in a controversy affecting his citizenship otherwise justiciable such as the case at bar, would be unconstitutional."

**4.** Espino v. Wixon, 9 Cir., 1943, 136 F. 2d 96. See, Ex parte Gros, D.C.N.D. Cal.1954, 123 F.Supp. 718, 719, and cases there cited. Contra, United States ex rel. Chu Leung v. Shaughessy, 2 Cir., 1949, 176 F.2d 249, 250. Cf., United States ex rel. Lapides v. Watkins, 2 Cir., 1948, 165 F.2d 1017.

**5.** Acheson v. Fujiko Furusho, 9 Cir., 1954, 212 F.2d 284, 296; Lew Thun v. Mc-

Grath, D.C.S.D.N.Y., 16 F.R.D. 352, 354; Gan Seow Tung v. Clark, D.C.S.D.Cal. 1949, 83 F.Supp. 482, 484–485.

**6.** E.g., Perez v. Brownell, 1958, 356 U.S. 44, 47, note 2, 78 S.Ct. 568, 2 L.Ed.2d 603; De Vargas v. Brownell, 5 Cir., 1958, 251 F.2d 869, 871 (Par. 7); Delmore v. Brownell, 3 Cir., 1956, 236 F.2d 598, 599, n. 1, 599–600; Pandolfo v. Acheson, 2 Cir., 1953, 202 F.2d 38, 40–41; Wong Wing Foo v. McGrath, 9 Cir., 1952, 196 F.2d 120, 121–123; Mah Ying Og v. McGrath, 1950, 88 U.S.App.D.C. 87, 187 F.2d 199, 201–202; Ah Kong v. Dulles, D.C.D.N.J.1955, 130 F.Supp. 546.

**7.** The following are taken from pages 12, 13, 14, 15, 16, 17, 22 and 23 of the record:
"The Court: Why don't we hear the witnesses that are present at this time?
"Mr. Hammond (Assistant District Attorney): It sounds almost like a formality but I am going to object, that is granting the petitioner a trial de novo which he is not entitled to.
"Mr. Chew (Plaintiff's attorney): If it please the Court, if the Court would deny me the opportunity to present any evidence now I would ask the Court to

law rendered by the District Judge shows clearly that this proceeding was a review to determine if there was "substantial evidence on the record as a whole" to support the administrative findings:

"Conclusions of Law

"The findings of the Immigration and Naturalization Service and

abate it, reopen the immigration proceedings, and then bring it again up to this Court. Ultimately speaking, this Court is going to pass on this issue anyway.

"Mr. Hammond: Such a motion couldn't even be granted—

"The Court: Well, of course, it may not be in the discretion of the Court, but as counsel know, and the District Attorney's Office has known for sometime, since these hearings are before the Court, the Court probably does give you considerable latitude so as to develop all the material facts.

\* \* \* \* \*

"Mr. Hammond: This is just exactly, Your Honor, what the scope of judicial review intended to prevent. In other words, they get two bites of the apple, if they don't make it by review then we have a trial de novo here and I have no way of knowing what he is coming up with here—like saying he was insane at the time they made the birth certificate in Juarez—I have no way of knowing all those things, and it is all hearsay. If they don't make it one time they get a little more evidence and we try it a second time. The only thing we have to go on is what happened below. Some affidavit and any other witness is totally foreign to what happened and totally foreign to the issue, I have no way of combating, so to speak, additional testimony, other than cross-examination, and I am certain it wouldn't avail the Government anything.

"The Court: What is the specific evidence you would like to offer here that wasn't heard on the Immigration hearing?

\* \* \* \* \*

"The Court: Are you offering the record?

"Mr. Hammond: Yes, Your Honor, but counsel well knowns that he has that record available to him and all the points against this man are outlined in there and then he comes up with additional testimony and where is the Government left?

"The Court: Well, it is still within the control of the Court.

the Board of Immigration Appeals are supported by substantial evidence."

II

Normally, in this type case, the record of the prior administrative proceeding is inadmissible as incompetent and

"Mr. Hammond: But there are certain human aspects of the case that I don't feel ought to be in it.

"The Court: Maybe so, but I think there is also a matter of justice in these things too, to let the facts fully develop, the material facts.

"Mr. Chew: Well, that is the very crux. This isn't in the nature of a judicial review, this is in the nature of a declaratory judgment. There is a difference. I don't think we are precluded, because of the testimony that was developed at the hearing, from bringing in evidence that is competent and relevant, I believe we can.

"Mr. Hammond: If counsel wants to argue that point I can show the Court where it was definitely not intended to broaden the scope of judicial review and that means trial de novo. I can cite authorities.

"Mr. Chew: We are not asking for a full trial de novo.

"Mr. Hammond: Well, any evidence, any new evidence constitutes a trial de novo.

\* \* \* \* \*

"Mr. Hammond: The same objection will run to tomorrow or the next day or the next day. *Counsel is not entitled to have witnesses. This is a judicial review of a record of what happened on appeal and that is the function of the Court and now counsel wants us to re-try the whole case again, and even if we don't re-try the whole case—*

"The Court: *No, the Court is not going to re-try the whole case.* (Italics supplied.)

\* \* \* \* \*

"Mr. Hammond: If it is all right with counsel for the Petitioner—I know these people came from Odessa and it would be, I guess it would be kind of hard to have them stay here overnight but they were going to anyway, I wouldn't mind briefing this point to the Court, as far as scope of review, and getting the authorities that state that counsel does not get a trial de novo but we have to go by the record, and I am sure I could have it

hearsay evidence [8] and even prejudicial to the right of a trial de novo,[9] but this Court has held it admissible when introduced by stipulation.[10] While the record of the hearing was certainly stipulated here, I am of the firm conviction that, had plaintiff's counsel been fully aware of the scope of the action and had not the District Judge held that "the Court is not going to re-try the whole case," the prior record would not have been stipulated or introduced because it contained such damaging and adverse evidence as:

(a) Investigator's report that appellant at one time held office in Mexico, which by inference would make appellant a Mexican Citizen since citizenship is a prerequisite to holding such office;

(b) Birth certificate of appellant's daughter, Sofia Martinez, showing appellant to be a native of the Village of San Antonio del Bravo, Chihuahua, Mexico;

(c) Report of immigration hearing of Hilaria Martinez, appellant's sister, containing a statement that appellant was a Mexican national. Appellant was not a party to said hearing;

(d) Appellant's marriage cetificate in 1914 indicating appellant's birth in San Antonio del Bravo.

Further, plaintiff certainly would not have introduced or stipulated the prior record because, in my opinion, he could have established a prima facie case of citizenship by the mere introduction of six certificates of citizenship issued by the Immigration Department to his children on the basis that he was a national of the United States.

### III

Contrary to the holding of the majority in this case, the cases are replete with the proposition that a plaintiff has the ordinary burden of proving his citizenship by a mere preponderance of the evidence, as in normal civil cases,[11] but "once he makes a prima facie case of citizenship the government's rebuttal must be by clear, unequivocal, and convincing evidence." [12] Therefore, the

---

to the Court by late this afternoon or in the morning.

"The Court: Well, the Court doesn't promise to be controlled or in any way influenced by any testimony you may offer, but I think in the interest of justice you ought to be permitted to perfect your record. If the Court feels that your testimony is not material and not admissible under the decisions in this matter, why, he will strike it and he will even do so after you present it, but if you insist on it for the purpose of perfecting your record the Court will permit it for that purpose and that purpose only at this time. He will determine later its value, if it has any.

"Mr. Chew: All right, sir. The entire record, it will be by stipulation introduced.

"The Court: Yes, that is understood, of course, that is what the Court is going to act on, and if you have anything supplemental that is admissible or in the interest of justice the Court will hear it but he repeats that if he doesn't think it is material he will later strike it or at least disregard it when he announces his decision.

"Mr. Chew: All right, sir.

"The Court: Let the record show, Mr. Reporter, that this is over the ob-

jection of the District Attorney and the Immigration Department and they not only object but except to the ruling of the Court."

8. De Vargas v. Brownell, 5 Cir., 1958, 251 F.2d 869, 871.

9. Wong Wing Foo v. McGrath, 9 Cir., 1952, 196 F.2d 120, 121–124. See, Shew v. Brownell, 9 Cir., 1955, 219 F.2d 301, 302, where the court held the admission of the immigration record to be error but not prejudicial error.

10. Lim Kwock Soon v. Brownell, 5 Cir., 1958, 253 F.2d 809, 810; Gee Chee On v. Brownell, 5 Cir., 1958, 253 F.2d 814. See also, Lee Mon Hong v. McGranery, D.C.N.D.Cal.1953, 110 F.Supp. 682, 683, affirmed Brownell v. Lee Mon Hong, 9 Cir., 1954, 217 F.2d 143.

11. E. g., Shew v. Brownell, 9 Cir., 1955, 219 F.2d 301; Ly Shew v. Dulles, 9 Cir., 1954, 219 F.2d 413, 416. See, De Vargas v. Brownell, 5 Cir., 1958, 251 F.2d 869, 871.

12. E. g., Delmore v. Brownell, D.C.D.N.J. 1955, 135 F.Supp. 470, 473, affirmed sub nom. 3 Cir., 1956, 236 F.2d 598.

question becomes, what will constitute a prima facie case of citizenship in order to shift the burden to the Government?

It has long been established that in denaturalization proceedings [13] the mere evidence of a certificate of naturalization will shift the burden of proof upon the Government, which is so strict that the Supreme Court will "reexamine the facts to determine whether the United States has carried its burden of proving by 'clear, unequivocal, and convincing' evidence, which does not leave 'the issue in doubt,' that the citizen who is sought to be restored to the status of an alien obtained his naturalization certificate illegally." [14]

Likewise, where a plaintiff seeks a declaration of citizenship under 8 U.S.C.A. § 1503 and the Government's defense is that he expatriated himself [15] by some act or acts, the plaintiff needs only to establish prima facie evidence of citizenship by birth, parentage, or prior adjudication of citizenship or nationality in order for the Government to bear the heavy burden of proving by "clear, unequivocal, and convincing evidence" that by his acts the plaintiff expatriated himself. This is the same burden as in denaturalization proceedings.[16] The Supreme Court recently reaffirmed this in Perez v. Brownell, 1958, 356 U.S. 44, 47, note 2,

78 S.Ct. 568, 570, 2 L.Ed.2d 603, where it stated:

"* * * The judicial hearing in such an action is a trial *de novo* in which the individual need make only a *prima facie* case establishing his citizenship by birth or naturalization. See Pandolfo v. Acheson, 2 Cir., 202 F.2d 38, 40–41. The Government must prove the act of expatriation on which the denial was based by ' "clear, unequivocal, and convincing" evidence which does not leave "the issue in doubt".' Gonzales v. Landon, 350 U.S. 920, 76 S. Ct. 210, 100 L.Ed. 806; see Schneiderman v. United States, 320 U.S. 118, 158, 63 S.Ct. 1333, 1352, 87 L. Ed. 1796."

Since the Government carries the heavy burden of proof where a claim to citizenship is to be destroyed in denaturalization and since it carries the same burden in an 8 U.S.C.A. § 1503 proceeding where plaintiff's prima facie case is to be disproved by expatriation, there is no logical reason why the same rules should not apply to other 8 U.S.C.A. § 1503 cases where plaintiff's claim of citizenship is threatened by some department or agency ruling. And, as far as I can determine, all the cases so hold.

13. Now, 8 U.S.C.A. § 1451.

14. Knauer v. United States, 1946, 328 U.S. 654, 657–658, 66 S.Ct. 1304, 1307, 90 L. Ed. 1500. See also, Baumgartner v. United States, 1944, 322 U.S. 665, 670, 671, 64 S.Ct. 1240, 88 L.Ed. 1525; Schneiderman v. United States, 1943, 320 U.S. 118, 124, 63 S.Ct. 1333, 87 L.Ed. 1796.

15. By acts under 8 U.S.C.A. § 1481(a).

16. See, Gonzales v. Landon, 1955, 350 U.S. 920, 76 S.Ct. 210. In Pandolfo v. Acheson, 2 Cir., 1953, 202 F.2d 38, 40, plaintiff "made a *prima facie* case by alleging and proving his birth in New York. The Government then had the burden of showing that he had expatriated himself." In Bauer v. Clark, 7 Cir., 1957, 161 F.2d 397, 400, 401, the court held

that in a declaratory judgment action the proof of a certificate of naturalization established a *prima facie* case which shifted the burden to the Government to establish the affirmative defense of expatriation, the burden being the same as that in denaturalization proceedings. See also, Augello v. Dulles, 2 Cir., 1955, 220 F.2d 344; Monaco v. Dulles, 2 Cir., 1954, 210 F.2d 760, 762; Lehmann v. Acheson, 3 Cir., 1953, 206 F.2d 592, 598–599; Gensheimer v. Dulles, D.C.N.J. 1954, 117 F.Supp. 836, 839; Rueff v. Brownell, D.C.N.J.1953, 116 F.Supp. 298, 307; Frausto v. Brownell, D.C.S.D.Cal. 1956, 140 F.Supp. 660, 668; Eelhart v. Dulles, D.C.S.D.N.Y.1955, 135 F.Supp. 12; Akiyo Oye v. Acheson, D.C.N.D.Cal. 1953, 110 F.Supp. 635.

Thus, in Delmore v. Brownell, 3 Cir., 1956, 236 F.2d 598, 600, affirming D.C., 135 F.Supp. 470, the court, through Chief Judge Biggs, held that a *letter* from the Commissioner of Immigration stating that "Mr. Delmore may properly be regarded a native and citizen of the United States" constituted a determination of Delmore's status which established his prima facie case of citizenship, and that "once the United States has determined that an individual is a citizen, it should be required to disprove its own determination by 'clear, unequivocal, and convincing evidence.'" This case and the lower court's opinion are an excellent resume of this point of law. In McGrath v. Chung Young, 9 Cir., 1951, 188 F.2d 975, 977, a *prior finding* of a Board of Special Inquiry of the United States Department of Labor, Immigration Service, that plaintiff was born in Hawaii, established a prima facie case which the Government failed to overcome. And, in Wong Gum v. McGranery, D.C.N.D.Cal. 1953, 111 F.Supp. 114, the court held that a *certificate of identity* from the Department of Labor stating that the plaintiff was a son of a native-born citizen was prima facie evidence of the fact that he was a citizen of the United States, and, while this presumption may be rebutted by fraud or other circumstances, the burden is then on the Government of producing substantial evidence of alienage. Likewise, in Ah Kong v. Dulles, D.C.N.J.1955, 130 F.Supp. 546, 547, a *certificate of identity* by the Commissioner of the United States Immigration Service was held to establish a prima facie case which satisfies the burden of proof that the plaintiff must establish his claim by a fair preponderance of the evidence.

The only case appearing to be to the contrary is Mah Toi v. Brownell, 9 Cir., 1955, 219 F.2d 642, 644, where, upon plaintiff's *concession* that if an order of the California Supreme Court for San Francisco County reciting that the plain-

tiff was born in San Francisco was not conclusive evidence of "native birth as a matter of law, its admission in evidence did not shift the burden of proving the fact," the Court held that the burden did not shift. Even though this case is easily distinguishable, since the evidence of citizenship was adjudged by an inferior state tribunal rather than an agency or department of the United States Government, I believe, as stated by Chief Judge Biggs in Delmore v. Brownell, supra, that "the ruling was clouded by the concession" of plaintiff.

Appellant Reyes, in the case at bar, did not have a certificate of citizenship from the Department of Immigration and Naturalization, as held by my brothers. Had he had such a certificate, his case would have been much stronger. But six of his children were issued certificates of citizenship on the basis of him being a national.[17] Certainly, the mere introduction of the six certificates of Reyes' children establishes a prima facie case of his status as a citizen which should require the Government "to dispose of its own determination by 'clear, unequivocal, and convincing evidence,'" as was done in Delmore v. Brownell; McGrath v. Chung Young; Wong Gum v. McGranery; Ah Kong v. Dulles, supra, and the cases in note 16, supra.

With deference, it seems to me that my brothers do not follow the overwhelming weight of authority when they state (with the erroneous assumption that he had a certificate of citizenship):

"Here appellant does not claim that the court did not give him a hearing. He stands almost entirely on the proposition that the certificate of citizenship issued by the Immigration Department in effect conferred upon him citizenship which gave rise to the presumption that the plaintiff was a citizen and placed upon the defendant a burden equivalent to that imposed in a denaturalization proceeding.

17. All six children received notification of proposed cancellation of their certificates of citizenship on the ground of the prior deportation proceeding against their father.

"While the opinion of the Court of Appeals for the Third Circuit, Delmore v. Brownell, note 1 supra, affirming the finding of the district judge that plaintiff was a citizen, does seem to lend some support to this view, the opinion itself recognizes that it is contrary to the opinion in Mah Toi v. Brownell [9 Cir.], 219 F.2d 642, cited by us with approval in De Vargas v. Brownell [5 Cir.], 251 F.2d [869], 870, and with which we wholly agree."

As pointed out above, Mah Toi v. Brownell, supra, is not even in point here and was cited by this Court in De Vargas v. Brownell, 5 Cir., 1958, 251 F.2d 869, 871, *only* for the well-established principle that "the burden of proof is on the claimant to prove that she is an American citizen." All the cases hold that.

Not to allow the present appellant the right to the presumptive effect of these six certificates of citizenship is, in my opinion, a denial of substantive constitutional rights and contrary to the often quoted mandate that,

"It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country."

Kwock Jan Fat v. White, 1920, 253 U.S. 454, 464, 40 S.Ct. 566, 64 L.Ed. 1010.

Even if these six certificates of citizenship were not enough in themselves to establish Reyes' prima facie case and shift the burden to the Government, certainly they with other substantive evidence which Reyes could introduce would be more than enough to make out his prima facie case under the authorities

discussed supra. This other evidence is:

(1) A baptismal certificate from St. Joseph's Church in Fort Davis, Texas, dated August 4, 1888, and showing his birth to be on March 30, 1888, but not showing the place of birth. Such a baptismal certificate may be considered as some evidence. Scott v. McGrath, D.C.E.D.N.Y.1952, 104 F.Supp. 267, 271.

(2) A delayed birth certificate dated April 4, 1945, from the Bureau of Vital Statistics of the Texas Department of Health, showing his birth at Fort Davis, Texas, on March 30, 1888.

(3) The mere fact that Reyes has been in this Country continuously since 1944, earning a living by farming, and holding himself out to be an American citizen. See Chin Wing Dong v. Clark, D.C.W.D.Wash.1948, 76 F.Supp. 648.

(4) Reyes' own statements that his parents and godmother told him he was born in Fort Davis, Texas. This is hearsay but admissible evidence Lee Pong Tai v. Acheson, D.C. E.D.Pa.1952, 104 F.Supp. 503, 505. Cf., De Vargas v. Brownell, supra, 251 F.2d 869, 871.

IV

There is one other point which was overlooked by the District Attorney. The sole defendant, Marcus T. Neelly, as Director of Immigration and Naturalization Service, is not a proper or necessary party-defendant[18] since he is not the *"head* of such department or independent agency" as required by 8 U.S.C.A. § 1503. While Attorney General Rogers is the proper party here, I do not believe that

---

[18]. The cases are unanimous. See, Ginn v. Biddle, D.C.E.D.Pa.1945, 60 F.Supp. 530, 531; United States ex rel. Medeiros v. Clark, D.C.S.D.N.Y.1948, 82 F.Supp. 412; Gan Seow Tung v. Carusi, D.C.S.D. Cal.1947, 83 F.Supp. 480, 481; Rossello v. Marshall, D.C.S.D.N.Y.1952, 12 F.R.D. 352; Lee Hong v. Acheson, D.C.S.D.Cal.

1953, 110 F.Supp. 60, 62; Tijerina v. Brownell, D.C.S.D.Tex.1956, 141 F.Supp. 266, 267; Skaros v. Brownell, D.C.W.D. N.Y.1957, 162 F.Supp. 63, 64.

For proper parties under a review of a deportation order, see Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868.

the Government could now raise this question as a jurisdictional matter because it has in no way been prejudicial. Further, this action is to determine the plaintiff's status to the whole world, not relating to the discharge of any official duty, and the "head" of the department or agency is merely a formal party.[19]

## V

In summary, I must respectfully dissent from the majority opinion because I believe that Reyes was done substantial injustice in not being given a trial de novo, in having the record of the former hearing before the Immigration and Naturalization Service and Board of Immigration Appeals erroneously stipulated into the trial, and in not having his easily established prima facie case properly overcome by the Government's proof of "clear, unequivocal, and convincing evidence." Certainly, the standard applied by the district court, that is, "The findings of the Immigration and Naturalization Service and the Board of Immigration Appeals are supported by substantial evidence," is a completely erroneous standard. If that were the only error, in my opinion, it would require reversal.

Rehearing denied: RIVES, Circuit Judge, dissenting.

19. In Lew Thun v. McGrath, D.C.S.D.N.Y., 16 F.R.D. 352, 354, Judge Dawson stated that failure to substitute Herbert Brownell, Jr. for J. Howard McGrath as Defendant under Fed.Rules Civ.Proc. Rule 25(d) 28 U.S.C.A. would not cause a dismissal of the action as abated, stating:

"Must we, however, wait for an amendment to the Rule (Rule 25(d))? This is not an action to command the individual Attorney General to act in a particular way or to refrain from acting in a particular way. It is an action for a declaration of status. The declaration is binding upon not merely the Attorney General but upon the world. In drafting Section 503 of the Nationality Act of 1940, Congress specifically set forth a declaratory remedy for the determination of citizenship status. The officer mentioned in the Section as the person against whom suit is brought is no more than a formal party, one through whom the government may be made a party in the action."

The Court of Appeals for the Ninth Circuit likewise decided this abatement question by stating in Acheson v. Fujiko Furusho, 9 Cir., 1954, 212 F.2d 284, 296:

"In summation, also, we repeat that since a judgment rendered in a § 903 action cannot be a command to any head of any governmental department to do anything or to refrain from doing anything, but fixes a status for the plaintiff which all persons inclusive of governmental authorities must respect, the action does not relate to the 'discharge', i. e., the carrying out, of any official duty.

"Since the judgments obtained or which may be obtained in the instant case would not be ineffectual, but would establish to the world whether or not the plaintiffs are United States nationals, no reason or law exists requiring their abatement simply because there has been a period when the ex-officio defendant has not been formally made a party to the action."